38 Cal.Rptr.3d 1 (2005)
135 Cal.App.4th 914
The PEOPLE, Plaintiff and Respondent,
v.
Jeffrey Alan SMITH and Mark Perry Taffola, Defendants and Appellants.
No. G034443.
Court of Appeal, Fourth District, Division Three.
December 27, 2005.
As Modified on Denial of Rehearing January 19, 2006.
*3 Mark Alan Hart, Northridge, under appointment by the Court of Appeal, for Defendant and Appellant Jeffrey Alan Smith.
Richard A. Levy, Torrance, under appointment by the Court of Appeal, for Defendant and Appellant Mark Perry Taffolla.
*4 Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Arlene Aquintey Sevidal and Janelle Boustany, Deputy Attorneys General, for Plaintiff and Respondent.

*2 OPINION
IKOLA, J.
Defendants Jeffrey Alan Smith and Mark Perry Taffolla were convicted of first degree murder, first degree burglary, and attempted robbery. The jury found true two allegations of felony-murder special circumstances, and both defendants were sentenced to life without the possibility of parole.
Smith contends the court committed Aranda/Bruton error (See Bruton v. United States (1968) 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (Bruton); People v. Aranda (1965) 63 Cal.2d 518, 47 Cal.Rptr. 353, 407 P.2d 265 (Aranda)), and violated his confrontation rights by admitting testimony of Taffolla's out-of-court statements incriminating Smith. We disagree. Taffolla's statements were admissible against Smith pursuant to the hearsay exception for spontaneous statements, and so the Aranda/Bruton rule did not apply. Admitting these statements did not violate Smith's confrontation rights, because the statements were nontestimonial and fell within a firmly rooted hearsay exception. We also reject Smith's claims of prosecutorial misconduct, instructional error, and cruel and unusual punishment. As for Taffolla, we reject his challenges to the denial of his Marsden motion (People v. Marsden (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44 (Marsden)), the finding on the felony-murder special circumstances allegation against him, and the jury instructions. Therefore, we affirm the judgments.

FACTS
April Star was found dead in her Midway City motel room on September 3, 1998. She had last been seen on September 1. Her head and face were beaten severely, and she suffered 27 knife wounds. Her head had been slammed against the wall, leaving a hole in the drywall. A broken steam iron and a buck knife lay next to her body. The iron's cord was detached, and wrapped around her neck. Blood was found in several places in her room, and a trail of blood led away from her room to a wall running along McFadden Street. The crime went unsolved until April 2002, when an Orange County Sheriff's Department investigator interviewed Jessica Robledo.
As she later testified at trial, Robledo and her boyfriend, Taffolla, had lived upstairs from Star in 1998. Taffolla was in their motel room on the night of September 1, 1998, with Smith and a man named Vincent Felix. The three men were still together in the room when Robledo went to bed. Taffolla called her the next morning at 3:00 a.m., and told her Star had been killed. He instructed her not to answer the door or go outside. He returned to their room a little while later. Taffolla then told Robledo that the three men had gone to Star's room to rob her. He had waited outside Star's room as a lookout, while Smith went inside and Felix left to get his car. Taffolla told her an altercation involving an iron occurred in the room, in which Smith was injured. Taffolla said he and Smith then ran to McFadden Street, where Felix picked them up in his car. Taffolla also said Star was not supposed to be killed. Taffolla warned Robledo not to mention the incident to anyone.
Other evidence corroborated Robledo's account of Taffolla's statement. While no *5 forensic evidence indicated Taffolla or Felix had been in Star's room, Smith's blood was found on Star's panties, a vanity outside the bathroom, an overturned chair by the front door, the interior door knob, and the entry threshold. The trail of blood leading from Star's room to McFadden Street contained both Smith's and Star's blood. Smith was treated on September 2 for a deep laceration to his hand. He was later unable to substantiate his claim as to how he had cut it. The buck knife in Star's room was determined to be a collectible, and Smith's father owned a knife collection to which Smith had access.
But almost no evidence suggested Star had been robbed. None of her belongings were found to be missing. She was still wearing a necklace and rings when her body was found. Her purse and wallet were still in the room. Credit cards were visible in the wallet, and a zippered compartment in the wallet contained a hundred-dollar bill. Other than Taffolla's statement, only two pieces of evidence suggested a robbery had occurred or been attempted. First, Star apparently had enough cash before she was killed to pay her rent and buy fast food and a drink on September 1, but no loose cash was found in her room. Second, a witness claimed to have seen a bloody dollar bill near the motel's dumpster shortly after her murder.
Smith and Taffolla were arrested and charged with one count each of first degree murder with two special circumstance allegations of murder in the commission or attempted commission of a burglary and a robbery (Pen.Code, §§ 187, 190.2, subd. (a)(17)),[1] first degree burglary (§§ 459, 460, subd. (a)), and first degree robbery (§§ 211, 212.5, subd. (a)). They were tried jointly. Smith filed an Aranda/Bruton motion to sever his trial or redact Taffolla's out-of-court statement to Robledo, but the court denied his motion.
At trial, Robledo testified about Taffolla's statement over Smith's hearsay objection. Her testimony contained several details not included in her original statement to the investigator. The court thus allowed the investigator to testify as to what Robledo had told him about Taffolla's statement as a prior consistent statement.
Smith took the stand in his defense. He testified that he went with Taffolla and Felix to buy drugs from Star, but Taffolla returned to his room before they met with Star. Smith said Felix asked Star to use her bathroom, then came out and attacked her, slashing Smith when he tried to intervene. Smith then ran away to McFadden Street, where Felix and Taffolla later drove by and coaxed him into Felix's car.[2]
After requesting a read back of Robledo's entire testimony, the jury found Smith and Taffolla guilty of first degree murder. It found true the burglary special circumstance as to both defendants, and found true the robbery special circumstance as to Taffolla. It inconsistently found the robbery special circumstance both true and not true as to Smith.[3] It further found *6 both defendants guilty of first degree burglary and the lesser included offense of attempted first degree robbery. The court sentenced each defendant to imprisonment for life without possibility of parole.

DISCUSSION

Testimony of Taffolla's Hearsay Statements Did Not Violate the Aranda/Bruton Rule
Smith contends the court erred by allowing Robledo to testify about what Taffolla told her concerning the crime. He further contends the erroneous admission of Taffolla's hearsay statements  the only substantial evidence Smith committed a burglary or attempted robbery  violated the Aranda/Bruton rule and his right to confrontation. Thus, Smith argues, the court should have excluded Robledo's testimony recounting Taffolla's statements, leaving insufficient evidence to sustain a true finding on the special circumstance allegations.
The threshold issue is whether Taffolla's statements were admissible against Smith under our state hearsay rules. This issue is primary because the Aranda/Bruton rule applies here only if Taffolla's statements were inadmissible against Smith. The Aranda/Bruton rule bars admission in a joint trial of one defendant's out-of-court confession that powerfully and facially incriminates a codefendant, even if the court instructs the jury to consider the confession only against the declarant. (Bruton, supra, 391 U.S. at pp. 135-136, 88 S.Ct. 1620; Aranda, supra, 63 Cal.2d at pp. 529-530, 47 Cal.Rptr. 353, 407 P.2d 265.) The rule recognizes the jury may struggle to obey such a limiting instruction when both defendants are in the courtroom, tried for the same crime, and an unfair danger exists the jury will improperly consider the hearsay confession against the non-declarant codefendant. (Bruton, supra, 391 U.S. at pp. 135-136, 88 S.Ct. 1620.) To avoid this danger, the court must either sever the trials or redact the statement to avoid references to the codefendant. (Aranda, supra, 63 Cal.2d at pp. 530-531, 47 Cal.Rptr. 353, 407 P.2d 265.) The rule thus presumes the statement is an admissible admission by the declarant and inadmissible hearsay against the codefendant. (People v. Fletcher (1996) 13 Cal.4th 451, 455, 53 Cal.Rptr.2d 572, 917 P.2d 187.) On the other hand, if the statement is admissible against the codefendant under a hearsay exception, and its admission otherwise survives confrontation analysis, then the jury may consider it against the codefendant; no reason exists for severance or redaction. (People v. Greenberger (1997) 58 Cal.App.4th 298, 331-332, 68 Cal.Rptr.2d 61 (Greenberger).)
According to Smith, the court relied on two hearsay exceptions in denying his Aranda/Bruton motion and allowing Robledo's testimony: the statement against interest exception (Evid.Code, § 1230), and the coconspirator statement exception (Evid.Code, § 1223). We agree with Smith that these two hearsay exceptions do not apply. The statement against interest exception allows admission only of those portions of the statement that are "specifically disserving" to the declarant's interest. (People v. Leach (1975) 15 Cal.3d 419, 441, 124 Cal.Rptr. 752, 541 P.2d 296.) But Taffolla's statements laid blame for the killing squarely on Smith. And to the extent Taffolla's statement implied that Smith went to Star's room to rob her, it was not specifically disserving of Taffolla. (People v. Duarte (2000) 24 Cal.4th 603, 612-613, 101 Cal.Rptr.2d 701, 12 P.3d 1110 [statements that minimize declarant's responsibility or shift blame to others are *7 not specifically disserving of declarant's interests].) Nor were Taffolla's statements admissible as statements by a coconspirator. Taffolla spoke to Robledo after Star had been killed and the three men had successfully fled the scene. Thus, Taffolla made his statements after the alleged conspiracy had achieved its objective, and so the exception is inapplicable. (People v. Hardy (1992) 2 Cal.4th 86, 143, 5 Cal.Rptr.2d 796, 825 P.2d 781; Leach, supra, 15 Cal.3d at p. 436, 124 Cal.Rptr. 752, 541 P.2d 296.) The Attorney General does not defend either hearsay exception on appeal, conceding the points.
But the record indicates the court also relied on a third hearsay exception: the spontaneous statement exception. (Evid.Code, § 1240.) The court explicitly relied on both the statement against interest and spontaneous statement exceptions when it denied Smith's Aranda/Bruton motion. The court did not reiterate its reliance on the spontaneous statement exception when it overruled Smith's hearsay objection at trial, which was when it suggested the coconspirator statement exception applied. But we review the court's ruling allowing Robledo's testimony, not its reasoning, and its "ruling must be upheld if the [testimony] was admissible under any hearsay exception." (People v. Karis (1988) 46 Cal.3d 612, 635, 250 Cal.Rptr. 659, 758 P.2d 1189.) Inexplicably, no party addressed the spontaneous statement exception on appeal, and so we invited additional briefing on the issue.
We conclude the court did not abuse its discretion in admitting Robledo's testimony recounting Taffolla's statements. (See People v. Brown (2003) 31 Cal.4th 518, 534, 3 Cal.Rptr.3d 145, 73 P.3d 1137 (Brown) [evidentiary rulings reviewed for an abuse of discretion].) Taffolla's statements qualified as spontaneous statements. Evidence Code section 1240 provides, "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) [w]as made spontaneously while the declarant was under the stress of excitement caused by such perception." These preliminary facts must be supported with substantial evidence. (Brown, supra, 31 Cal.4th at p. 541, 3 Cal.Rptr.3d 145, 73 P.3d 1137.)
Importantly, "the requirement is for a spontaneous declaration, not an instantaneous one." (People v. Riva (2003) 112 Cal.App.4th 981, 996, 5 Cal.Rptr.3d 649.) Although "`[w]hen the statements in question were made . . . [is an] important factor[] to be considered on the issue of spontaneity,'" the mere "`"lapse of time between the event and the declarations [will not] deprive[] the statements of spontaneity if it nevertheless appears that they were made under the stress of excitement and while the reflective powers were still in abeyance."'" (Brown, supra, 31 Cal.4th at p. 541, 3 Cal.Rptr.3d 145, 73 P.3d 1137, italics omitted.)
Here, Robledo's testimony about Taffolla's demeanor provided substantial evidence of the preliminary facts showing his statements were spontaneous. She testified that Taffolla, Smith, and Felix left Taffolla's motel room sometime between 9:00 p.m. and midnight; Taffolla called her at about 3:00 a.m., the next morning; and came back to the room shortly thereafter. Robledo testified that Taffolla was very "distraught" and "very anxious, not knowing what to do with himself." He had "a very distinctive look in his face, in his eyebrows and his eyes, and he had a completely blank look on his face." She had never seen him with that look before. This testimony sufficiently established that Taffolla was speaking "under the stress of excitement and while the reflective powers *8 were still in abeyance," notwithstanding the three to six hours that may have passed after the crime. (Brown, supra, 31 Cal.4th at p. 541, 3 Cal.Rptr.3d 145, 73 P.3d 1137, italics omitted [statement made two and one-half hours after crime still spontaneous].) Although the question is close, we cannot say the court abused its discretion in allowing Robledo's testimony. And because Taffolla's statements were admissible against Smith as spontaneous statements, the court did not err in denying Smith's Aranda/Bruton motion. (Greenberger, supra, 58 Cal.App.4th at pp. 331-332, 68 Cal.Rptr.2d 61.)

Testimony of Taffolla's Statements Did Not Violate Smith's Confrontation Rights
Smith further contends the admission of Taffolla's statements against him violated his confrontation rights. In Crawford v. Washington (2004) 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (Crawford), the United States Supreme Court held the confrontation clause bars admission of "testimonial" out-of-court statements against a criminal defendant unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant. (Id. at pp. 59, 68-69, 124 S.Ct. 1354.) A statement is testimonial if it was made in a formal proceeding or in response to structured police questioning. (Id. at p. 68, 124 S.Ct. 1354; cf. People v. Taulton (2005) 129 Cal.App.4th 1218, 1224, 29 Cal.Rptr.3d 203 (Taulton) [statement is testimonial if "it was obtained for the purpose of potentially using it in a criminal trial or determining if a criminal charge should issue"].) Taffolla made his statements to his girlfriend in their motel room, so it is not testimonial. (See Crawford, supra, 541 U.S. at p. 68, 124 S.Ct. 1354; cf. People v. Griffin (2004) 33 Cal.4th 536, 579-580, fn. 19, 15 Cal.Rptr.3d 743, 93 P.3d 344 [statement made to friend at school not testimonial]; Taulton, supra, 129 Cal.App.4th at p. 1224, 29 Cal.Rptr.3d 203.) For nontestimonial statements like those at issue here, Crawford left undisturbed the standard previously set forth in Ohio v. Roberts (1980) 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (Roberts). (See Crawford, supra, 541 U.S. at p. 68, 124 S.Ct. 1354; see also People v. Corella (2004) 122 Cal.App.4th 461, 467, 18 Cal.Rptr.3d 770.)
Under Roberts, admission of a hearsay statement does not violate the confrontation clause if the statement "bears adequate `indicia of reliability'"; that is, if it either "falls within a firmly rooted hearsay exception" or is cloaked with "particularized guarantees of trustworthiness." (Roberts, supra, 448 U.S. at p. 66, 100 S.Ct. 2531.) The spontaneous statement hearsay exception is firmly rooted. (White v. Illinois (1992) 502 U.S. 346, 355, fn. 8, 112 S.Ct. 736, 116 L.Ed.2d 848; accord Brown, supra, 31 Cal.4th at p. 542, 3 Cal.Rptr.3d 145, 73 P.3d 1137.) Thus, admitting Robledo's testimony pursuant to this exception did not violate Smith's confrontation rights.[4] (See Roberts, supra, 448 U.S. at p. 66, 100 S.Ct. 2531.)

The District Attorney Did Not Commit Prosecutorial Misconduct
Both defendants contend the District Attorney committed prosecutorial *9 misconduct in his closing argument. In Smith's opening statement, his counsel told the jury that Smith would testify that he and Felix entered Star's room; Smith so testified. But in closing argument, the District Attorney claimed that Smith's counsel had promised Smith would testify that he, Felix, and Taffolla entered Star's room. The defendants objected, and the court ordered the District Attorney to "stick to the evidence, not opening statements." When the District Attorney later made a similar remark, Taffolla's counsel objected again. This time, the court instructed the jury: "Argument is not evidence. The attorneys are given leeway to argue, and everybody understands it's not evidence and neither is opening statement. And so you're admonished not to use what is said in opening statement against or for a party in this case."
We find no misconduct. Generally, a prosecutor may comment on a discrepancy between a defendant's opening statement and the trial evidence. (People v. Harris (1989) 47 Cal.3d 1047, 1085, fn. 19, 255 Cal.Rptr. 352, 767 P.2d 619.) Defendants cite no cases holding a prosecutor's incorrect suggestion that such a discrepancy exists constitutes prosecutorial misconduct. They instead contend the District Attorney implied Smith's counsel knew all along that Taffolla had actually entered the victim's room with Smith and Felix, but allowed Smith to testify otherwise to better match the prosecution's forensic evidence. To be sure, a direct accusation that defense counsel lacks integrity may constitute prosecutorial misconduct. (People v. Hill (1998) 17 Cal.4th 800, 832, 72 Cal.Rptr.2d 656, 952 P.2d 673.) But no such direct accusation was leveled here. And the basis for the alleged inference that Smith's counsel allowed Smith to perjure himself  the purported change in Smith's story  was nonexistent. Indeed, the District Attorney asked the jurors to "check [their] notes" about Smith's opening statement. Accurate juror notes would have revealed the District Attorney was barking up the wrong tree. We cannot assume the jury drew the most damaging inference from the District Attorney's misguided remarks. (People v. Frye (1998) 18 Cal.4th 894, 970, 77 Cal.Rptr.2d 25, 959 P.2d 183.) Moreover, the court correctly admonished the jury that opening statements and closing arguments were not evidence, and "[w]e presume that the jury heeded the admonition and any error was cured." (People v. Wash (1993) 6 Cal.4th 215, 263, 24 Cal.Rptr.2d 421, 861 P.2d 1107.)

The Court Properly Denied Taffolla's Marsden Motion
Taffolla filed a pretrial written motion to replace his appointed counsel pursuant to Marsden, supra, 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44. The court held a hearing from which it excluded the prosecutor, and allowed Taffolla to argue his motion. Taffolla asserted his communications with his counsel were "down to zero," and complained his counsel failed to confirm he would attempt to interview Robledo before trial. The court denied his motion.
"When a defendant seeks discharge of his appointed counsel on the basis of inadequate representation by making what is commonly referred to as a Marsden motion, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of counsel's inadequacy. [Citations.] `A defendant is entitled to have appointed counsel discharged upon a showing that counsel is not providing adequate representation or that counsel and defendant have become embroiled in such an irreconcilable conflict that ineffective representation *10 is likely to result.' [Citations.] [¶] We review a trial court's decision declining to discharge appointed counsel under the deferential abuse of discretion standard." (People v. Cole (2004) 33 Cal.4th 1158, 1190, 17 Cal.Rptr.3d 532, 95 P.3d 811 (Cole).)
We conclude the court did not abuse its discretion in denying Taffolla's Marsden motion. The court correctly allowed Taffolla to "explain the basis of his contention and to relate specific instances of counsel's inadequacy." (Cole, supra, 33 Cal.4th at p. 1190, 17 Cal.Rptr.3d 532, 95 P.3d 811.) But Taffolla's contention his communication with his counsel was "down to zero" failed to show inadequate representation or irreconcilable conflict. "`[T]he number of times one sees his attorney, and the way in which one relates with his attorney, does not sufficiently establish incompetence.'" (Id. at p. 1192, 17 Cal.Rptr.3d 532, 95 P.3d 811.) Similarly, Taffolla's contention that his counsel had not promised to interview Robledo also fails to meet his burden. "[D]efendant's complaints regarding [his counsel's] purported inadequate investigation, trial preparation, and trial strategy were essentially tactical disagreements, which do not by themselves constitute an `irreconcilable conflict.'" (Ibid.) Thus, the court did not err in denying Taffolla's Marsden motion.

Substantial Evidence Supported the "True" Finding on the Felony-murder Special Circumstance Allegations against Taffolla
Taffolla concedes on appeal he was properly found guilty of first degree murder, but he disputes substantial evidence supported the felony-murder special circumstances. "`The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt. [Citations.] In making this determination, the appellate court "`must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'"'" (People v. Proby (1998) 60 Cal.App.4th 922, 927, 70 Cal.Rptr.2d 706 (Proby).)
"In order to support a finding of special circumstances murder, based on murder committed in the course of robbery, against an aider and abettor who is not the actual killer, the prosecution must show that the aider and abettor had intent to kill or acted with reckless indifference to human life while acting as a major participant in the underlying felony. (§ 190.2, subds. (c), (d).)" (Proby, supra, 60 Cal.App.4th at p. 927, 70 Cal.Rptr.2d 706, fn. omitted.)
We agree with Taffolla that no substantial evidence suggested he was an actual killer or had the intent to kill. No testimony or forensic evidence placed Taffolla in Star's room, other than a single DNA allele on a bathroom towel that was consistent with both Taffolla and Felix, and which the prosecution's own DNA expert dismissed as "very, very weak" and "very minor." That Star was attacked with a knife and an iron does not substantially suggest she was attacked by two different assailants, and even if it did, no evidence suggests one of the assailants was in fact Taffolla. At best, the evidence suggests either Taffolla or Felix may have helped attack Star, without giving us any basis to conclude it was Taffolla and not Felix. A "coin flip" situation like this does not constitute substantial evidence. (See People v. Allen (1985) 165 Cal.App.3d 616, 626, 211 Cal.Rptr. 837.)
On the other hand, we conclude substantial evidence showed Taffolla acted *11 with "reckless indifference to human life while acting as a major participant" in the attempted robbery of Star. (Proby, supra, 60 Cal.App.4th at p. 927, 70 Cal.Rptr.2d 706.) "The term `reckless indifference to human life' means `subjective awareness of the grave risk to human life created by his or her participation in the underlying felony.'" (Id. at p. 928, 70 Cal.Rptr.2d 706.) Even if Taffolla remained outside Star's room as a lookout, the jury could have found Taffolla gained a "subjective awareness of a grave risk to human life" during the many tumultuous minutes it would have taken for Star to be stabbed and slashed 27 times, beaten repeatedly in the face with a steam iron, and had her head slammed through the wall. In addition, when Smith emerged from her room covered in enough blood to leave a trail from the motel to McFadden Street, Taffolla chose to flee rather than going to Star's aid or summoning help. (People v. Hodgson (2003) 111 Cal.App.4th 566, 579-580, 3 Cal.Rptr.3d 575 (Hodgson) [defendant acted with reckless indifference by continuing to assist with robbery instead of coming to injured victim's aid]; see also Proby, supra, 60 Cal.App.4th at p. 929, 70 Cal.Rptr.2d 706 [same]; People v. Bustos (1994) 23 Cal.App.4th 1747, 1754, 29 Cal.Rptr.2d 112 [same].)
Similarly, substantial evidence showed Taffolla acted "as a major participant" in the attempted robbery of Star. As used in the term "`major participant,'" the word "`major'" means "`notable or conspicuous in effect or scope'" or "`one of the larger or more important members . . . of a . . . group.'" (Proby, supra, 60 Cal.App.4th at pp. 931, 933-934, 70 Cal.Rptr.2d 706.) The jury could have found beyond a reasonable doubt that Taffolla's contributions were "notable and conspicuous" because he was one of only three perpetrators, and served as the only lookout to an attempted robbery occurring in an occupied motel complex. (Hodgson, supra, 111 Cal.App.4th at pp. 579-580, 3 Cal.Rptr.3d 575 [defendant was "major participant" where robbery involved only two perpetrators and defendant helped actual killer escape].) Unlike the hypothetical "non-major participant" in Tison v. Arizona (1987) 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127  who "merely [sat] in a car away from the actual scene of the murders acting as the getaway driver to a robbery"  Taffolla stood sentry just outside Star's room, where the jury could infer he monitored and guarded the increasingly lengthy, loud, and violent attempted robbery-turned-murder. (Ibid. [noting that major participant and reckless indifference elements "often overlap"].)

The Court Did Not Err in Instructing the Jury
Smith and Taffolla contend the court erred by failing to instruct the jury sua sponte to view each other's testimony with distrust as accomplice testimony. (§ 1111.) The court had no duty to do so. To be sure, our Supreme Court once held that the court must instruct the jury sua sponte to view incriminating accomplice testimony with distrust, regardless of which party calls the accomplice as a witness. (People v. Guiuan (1998) 18 Cal.4th 558, 569, 76 Cal.Rptr.2d 239, 957 P.2d 928.) But the Supreme Court later clarified that when the testifying accomplice is a codefendant, an accomplice instruction must be given only "when requested by a defendant." (People v. Box (2000) 23 Cal.4th 1153, 1209, 99 Cal.Rptr.2d 69, 5 P.3d 130.) Thus, these cases have not disturbed the longstanding rule that an accomplice instruction need not be given sua sponte when the testifying accomplice is a codefendant. (See People v. Terry (1970) 2 Cal.3d 362, 398-399, 85 Cal.Rptr. 409, 466 P.2d 961, disapproved on another ground by People v. Carpenter (1997) 15 Cal.4th *12 312, 381-382, 63 Cal.Rptr.2d 1, 935 P.2d 708.)
Moreover, an accomplice instruction would have been improper even if the defendants had requested one. Taffolla lacked any basis to request an accomplice instruction because Smith's testimony exculpated him. (Guiuan, supra, 18 Cal.4th at p. 569, 76 Cal.Rptr.2d 239, 957 P.2d 928 ["the instruction concerning accomplice testimony should henceforth refer only to testimony that tends to incriminate the defendant"].) Smith lacked any basis to request one because Taffolla's spontaneous statement to Robledo was not accomplice "testimony" within the meaning of section 1111. (See People v. Rodrigues (1994) 8 Cal.4th 1060, 1133, 36 Cal.Rptr.2d 235, 885 P.2d 1 [statement "not made to law enforcement officials in the hope of leniency or immunity" does not require accomplice instruction]; see also People v. Sully (1991) 53 Cal.3d 1195, 1230, 283 Cal.Rptr. 144, 812 P.2d 163 [spontaneous statement does not require accomplice instruction].)
Taffolla further contends the court erred by failing to instruct the jury sua sponte on the burden of proof regarding his withdrawal defense. No one disputes the court must correctly instruct the jury on the burden of proof, even without request. (People v. Mower (2002) 28 Cal.4th 457, 122 Cal.Rptr.2d 326, 49 P.3d 1067.) And the court must instruct the jury on the defenses for which substantial evidence exists. (People v. Panah (2005) 35 Cal.4th 395, 484, 25 Cal.Rptr.3d 672, 107 P.3d 790.) Here, the court satisfied these requirements by giving the general instruction on the burden of proof, CALJIC No. 2.90, and correctly instructing the jury as to the elements of withdrawal. The court had no duty to go beyond these general instructions and give pinpoint instructions sua sponte reiterating the burden of proof on each of Taffolla's particular defenses. (People v. Saille (1991) 54 Cal.3d 1103, 1119, 2 Cal.Rptr.2d 364, 820 P.2d 588; see also 5 Witkin & Epstein, Cal.Criminal Law (3d. ed. 2000) Criminal Trial, § 610, p. 869.)

Smith's Sentence Does Not Constitutes Cruel and Unusual Punishment
Smith claims that imposing a sentence of life without the possibility of parole based on the felony-murder special circumstance constitutes cruel and unusual punishment and violates his due process rights. He contends it fails to provide a meaningful basis for the jury to distinguish between finding him guilty of first degree murder and finding the special circumstance true. Smith concedes our Supreme Court has rejected this claim before, when considering the even more severe sentence of death.
(People v. Pollock (2004) 32 Cal.4th 1153, 1195, 13 Cal.Rptr.3d 34, 89 P.3d 353 ["This court has consistently rejected the claim that the statutory special circumstances, including the felony-murder special circumstance, do not adequately narrow the class of persons subject to the death penalty"].) We reject it, too. (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)

DISPOSITION
The judgments are affirmed.
WE CONCUR: RYLAARSDAM, Acting P.J., and MOORE, J.
NOTES
[1] All further statutory references are to the Penal Code unless otherwise stated.
[2] Also, other evidence suggested Star's ex-boyfriend had paid Felix $7,200 to kill Star with the ex-boyfriend's knife.
[3] Smith contends this inconsistency requires us to order the court to modify the judgment against him to reflect that the jury found the robbery-murder special circumstance allegation not true, and that the sentence of life without possibility of parole was based solely on the burglary-murder special circumstance. But nothing in the record suggests the court relied upon the robbery-murder special circumstance when imposing its sentence of life without the possibility of parole. And the true finding on the burglary-murder special circumstance justifies the imposed sentence. Thus, we need not take any corrective action.
[4] The investigator's testimony about Robledo's prior consistent statements to him does not violate Smith's confrontation rights. Robledo testified at trial and was confronted. (See Crawford, supra, 541 U.S. at p. 68, 124 S.Ct. 1354 [confrontation clause satisfied when defendant has opportunity to cross-examine declarant].) And as noted ante, Taffolla's statements to Robledo were nontestimonial and spontaneous, and therefore admissible. (See Roberts, supra, 448 U.S. at p. 66, 100 S.Ct. 2531; accord Brown, supra, 31 Cal.4th at p. 542, 3 Cal.Rptr.3d 145, 73 P.3d 1137.)