Filed 3/18/13  P. v. Nevarez CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>EDWARD G. NEVAREZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B234857<br>(Super. Ct. No. TA063973)<br>(Los Angeles County) |

Edward G. Nevarez appeals the judgment entered after a jury convicted him on two counts of first degree murder (Pen. Code,[1] §§ 187, subd. (a), 189) and one count of robbery (§ 211).  The jury also found true allegations that the crimes were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)), and that the murders were committed while appellant was engaged in the commission of a robbery (§ 190.2, subd. (a)(17)).  The trial court sentenced him on the murder counts to two consecutive terms of life without the possibility of parole.  Sentencing on the robbery was stayed under section 654.  Appellant contends the evidence is insufficient to support his murder convictions and the robbery special-circumstance allegations.  We affirm.

---

[1] All further statutory references are to the Penal Code.

FACTUAL AND PROCEDURAL SUMMARY

Late at night on February 17, 2001, Enrique Hernandez and victims Anthony Esquer and Reynaldo Aguilar were drinking beer in Aguilar's parked SUV when appellant walked by with Andres Santana. Hernandez knew appellant and Santana as "Eric" and "Blanco," the monikers they used as members of the Lynwood Dukes gang. Hernandez had no trouble recognizing appellant because he had known him for 10 years.

When Hernandez left the SUV to buy more beer, appellant and Santana approached him and asked if he had any money. Hernandez replied that he had $10, and appellant took the money from him.

Hernandez followed appellant and Santana as they walked back toward the SUV. When Hernandez reached the SUV, the driver's side door was open and appellant and Santana were demanding money from Aguilar. The men started beating Aguilar, and Hernandez told them to leave him alone. As Aguilar was being beaten, Hernandez heard continued demands for money. Hernandez ran away after he saw a third man hiding behind the SUV holding an object in his hand. Hernandez looked back and saw that the third man had moved from the rear of the SUV to join appellant and Santana. Hernandez ran to a telephone booth and called 911.

When the police arrived, Aguilar and Esquer were both found lying on the ground covered in blood. Aguilar's wallet, ATM card, and wedding ring were missing. Lynwood Dukes gang graffiti was spray-painted on the ground near Esquer's body and on a vehicle parked near the SUV. Aguilar was pronounced dead at the scene. Esquer was transported to the hospital and was pronounced dead shortly thereafter. Autopsies later determined that both men had died from multiple blunt force head injuries inflicted with a hammer or a similar weapon. Aguilar suffered a total of 12 separate injuries to his head. Five of the injuries were skull fractures, each of which was independently life threatening. Esquer also had injuries to his clavicle area and lower legs that were consistent with having been repeatedly kicked or punched with a closed fist.

After making the 911 call, Hernandez returned to the scene and immediately identified appellant and Santana as the perpetrators. When Hernandez was

2

interviewed again the following morning, he reiterated his identifications of appellant and Santana and selected each of their photographs from "six-pack" lineups.

In the days following the murders, someone sprayed Lynwood Dukes gang graffiti on the sidewalk near flowers that had been placed at the crime scene. Someone also attempted to use Aguilar's ATM card at 14 different locations without surveillance cameras.

Appellant fled to Mexico following the murders.[2] In June 2010, he was arrested in Mexico and brought to the United States pursuant to a federal warrant.

At trial, the prosecution's gang expert opined that the Lynwood Dukes are a criminal street gang and that the crimes were committed for the gang's benefit. In his defense, appellant presented expert testimony criticizing the fact that certain forensic evidence was not collected.

DISCUSSION

On the murder counts, the jury was instructed on alternative theories of malice aforethought and felony murder. To find appellant guilty of first degree murder with malice aforethought, the jury had to find that the killings of Aguilar and Esquer were willful, deliberate and premeditated. (CALJIC Nos. 8.11, 8.20.) To find him guilty of felony murder, it had to find that (1) the killings occurred while appellant was engaged in the commission of a robbery; and (2) the robbery and the acts causing the deaths of Aguilar and Esquer were part of one continuous transaction. (CALCRIM Nos. 540A, 540B.) Appellant contends the evidence is insufficient to support his murder convictions

---

[2] Santana was arrested shortly after the crimes were committed. He was subsequently tried and convicted on two counts of first degree murder and robbery, with true findings on robbery special-circumstance and gang enhancement allegations. He was sentenced to two consecutive terms of life without the possibility of parole. On appeal, we struck 10-year enhancements that were erroneously imposed as to each indeterminate term under section 186.22 and otherwise affirmed. (*People v. Santana* (April 11, 2005, B167415) [nonpub. opn.].) The third assailant was never identified.

on either theory, as well as the jury's true findings on the robbery special-circumstance allegations.

In addressing challenges to the sufficiency of evidence, "the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]"' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054.)

In finding true the allegations that the murders of Aguilar and Esquer were committed while appellant was engaged in the commission of a robbery, the jury necessarily found him guilty of felony murder. (*People v. Kelly* (2007) 42 Cal.4th 763, 789.) Because the verdicts expressly reflect that appellant was found guilty of felony murder, we need only determine whether the evidence is sufficient to support that finding. In other words, we need not decide whether the evidence is sufficient to support a finding that the killings were premeditated and deliberated. (*Ibid.*)

"Under the felony-murder rule, a murder 'committed in the perpetration of, or attempt to perpetrate' one of several enumerated felonies, including robbery, is first degree murder. (§ 189.) The robbery-murder special circumstance applies to a murder 'committed while the defendant was engaged in . . . the commission of, [or] attempted commission of' robbery. (§ 190.2, subd. (a)(17)(A).) '[T]o prove a felony-murder

4

special-circumstance allegation, the prosecution must show that the defendant had an independent purpose for the commission of the felony, that is, the commission of the felony was not merely incidental to an intended murder.' [Citations.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27-28.) The prosecution must also prove the defendant formed the intent to steal prior to or in the process of killing the victim. (*Id.* at p. 28.)

To convict appellant of felony murder, the jury did not have to find that he actually perpetrated the killing. Rather, a defendant "'. . . may be vicariously responsible under the rules defining principals and criminal conspiracies. All persons aiding and abetting the commission of a robbery are guilty of first degree murder when one of them kills while acting in furtherance of the common design.' [Citation.]" (*People v. Pulido* (1997) 15 Cal.4th 713, 721.) "[I]n such circumstances, the felony-murder rule requires both a *causal* relationship and a *temporal* relationship between the underlying felony and the act resulting in death. The causal relationship is established by proof of a logical nexus, beyond mere coincidence of time and place, between the homicidal act and the underlying felony the nonkiller committed or attempted to commit. The temporal relationship is established by proof the felony and the homicidal act were part of one continuous transaction." (*People v. Cavitt* (2004) 33 Cal.4th 187, 193.)

Where a defendant is convicted of felony murder as an aider and abettor of robbery, the jury must also find that he or she acted either with an intent to kill or with reckless indifference to human life as a major participant in the robbery. (§ 190.2, subds. (c), (d); *People v. Smith* (2005) 135 Cal.App.4th 914, 927, overruled on another point as stated in *People v. Garcia* (2008) 168 Cal.App.4th 261, 291.) "'The term "reckless indifference to human life" means "subjective awareness of the grave risk to human life created by his or her participation in the underlying felony."' [Citation.]" (*Smith,* at p. 927.) "As used in the term '"major participant,"' the word '"major"' means '"notable or conspicuous in effect or scope"' or '"one of the larger or more important members . . . of a . . . group."' [Citation.]" (*Id.* at p. 928.)

Appellant argues that the convictions of felony murder must be reversed because there is insufficient evidence of a logical nexus between the robbery and the

murders. As our Supreme Court has recognized, however, "cases that raise a genuine issue as to the existence of a logical nexus between the felony and the homicide 'are few indeed.' It is difficult to imagine how such an issue could ever arise when the target of the felony was intentionally murdered by one of the perpetrators of the felony. Nor . . . does it seem likely that a genuine dispute could arise when the victim was killed . . . negligently or accidentally during the perpetration of the felony." (*People v. Cavitt, supra*, 33 Cal.4th at p. 204, fn. 5.) Here, Hernandez testified that he saw appellant and his fellow gang member Santana begin beating Aguilar after demanding money from him. Shortly thereafter, they were met by an accomplice who had been hiding behind Aguilar's SUV. Although Hernandez could not identify this individual, he was able to see that the man was carrying an object in this hand. When the police arrived at the scene only minutes later, Aguilar and Esquer were found beaten to death with a hammer-like object and Aguilar's wedding ring and wallet were missing. From this evidence, the jury could infer that appellant participated in the robbery and that the requisite causal and temporal relationship existed between the robbery and the killings. Contrary to appellant's claim, it is irrelevant whether he was armed with anything other than his fists. It is also of no moment whether the evidence establishes that appellant initiated the robbery with a subjective awareness that his participation involved a grave risk of death to his victims. The jury could have inferred that he gained such an awareness during the time it took to beat both victims to death in light of the fact he "chose to flee rather than going to [the victims'] aid or summoning help." (*People v. Smith, supra*, 135 Cal.App.4th at p. 927.)

Appellant's remaining contentions—which include the assertion that "there is no evidence that appellant knew the third person would intervene in the Aguilar robbery carrying an object"—fail to take into account the controlling standard of review. Viewing the record in the light most favorable to the judgment, the jury could infer from circumstantial evidence that appellant either had actual notice that his accomplice was armed with a deadly weapon or voluntarily continued to participate in the crime after discovering that fact. The evidence is thus sufficient to support appellant's conviction on

6

two counts of felony murder and the attendant true findings on the robbery special-circumstance allegations.  (*People v. Kraft, supra*, 23 Cal.4th at pp. 1053–1054.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

7

Michael Shultz, Judge

Superior Court County of Los Angeles

_____

Thomas T. Ono, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.