Filed 12/13/21  P. v. Bowen CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOEVAN BOWEN,<br><br>        Defendant and Appellant. | A161120<br><br>(San Francisco County<br>Super. Ct. Nos. CT10032036,<br>SCN213870) |

In February 2011, a jury found Joevan Bowen guilty of first degree murder.  (Pen. Code, § 187, subd. (a).)[1]  He was sentenced to 25 years to life in prison.  This court affirmed the judgment.  (*People v. Bowen* (Apr. 30, 2014, A132356) [nonpub. opn.].)  In February 2019, Bowen filed a section 1170.95 petition for resentencing.  After a hearing, the trial court denied the petition.  The court found that Bowen was a major participant who acted with reckless indifference to human life, and he was thus ineligible for resentencing.  Bowen appeals, arguing there was insufficient evidence to support the court's finding.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

1

# BACKGROUND

## I.  Trial Evidence[2]

One evening in February 2003, Edward Mitchell and Monterrio Davis decided to commit a robbery.  Davis had a .25-caliber gun.  The men drove around Oakland looking for potential victims.  Davis shot and robbed two victims.  In another incident, Mitchell shot a different victim after attempting to rob him.

The two men later picked up Bowen and Demar Lacy.  By the time they got into the car, the group had two guns — Davis's gun and another with an extended clip, which could hold more than an average amount of ammunition.  The four men then drove to San Francisco to commit more robberies.  They stopped at a liquor store where two women were standing outside.  Bowen attempted to rob one of the women by hitting her with a gun; she fled. The men then drove away, looking for additional victims.

The group saw Armando Arce walking in an alley with two women.  Bowen identified Arce as a robbery target.  The men drove into the alley, and all exited the car.  Bowen attempted to rob Arce and, during the ensuing scuffle, shot Arce 12 times, killing him.  The women ran away.  The men all got back in the car and left.

Bowen did not testify at his trial.  The jury found him guilty of first degree murder.  (§ 187, subd. (a).)  It did not return any finding on an enhancement allegation that Bowen personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)).  Bowen was sentenced to 25 years to life.

---

[2] These facts are taken from trial transcripts submitted with the section 1170.95 petition.

## II. Section 1170.95 Proceeding

In February 2019, Bowen petitioned for resentencing under section 1170.95. He alleged he was convicted pursuant to the felony-murder rule or natural and probable consequences doctrine, and he could not presently be convicted under recent amendments to the Penal Code. (§ 1170.95, subd. (a)(1)–(3).) The trial court found Bowen established a prima facie case for resentencing eligibility and issued an order to show cause.

At the June 2020 hearing, Bowen offered a version of events that conflicted with much of the testimony at trial. According to Bowen, he and the other men agreed to go to San Francisco to rob women. Lacy brought a loaded .9-millimeter gun with an extended clip, which Bowen handled. Mitchell also had a semiautomatic pistol. Bowen heard Davis say that he put "two heads on a flat." Additional testimony established this phrase meant Davis had killed people.

According to Bowen, Lacy robbed the woman at the liquor store while Bowen kept watch. After that robbery, Lacy and Bowen saw Arce and other women in an alley. Bowen identified them as targets to rob. The car stopped; Bowen, Lacy, and Mitchell jumped out, while Davis remained in the car. The women fled, and Bowen gave chase but stopped when they were too far away. He heard gunshots and turned to see Lacy standing over Arce, shooting. As Bowen returned to the car, he heard three or four more shots. Bowen testified that, at that point, he was about 15 to 20 feet away from Arce and Lacy. But video surveillance placed Bowen closer, about 10 to 15 feet away. The group got back in the car and drove away.

The trial court denied Bowen's petition for resentencing. The court acknowledged the jury had been unable to reach a verdict on whether he was the actual shooter. But even assuming Bowen's version of the events was

3

correct, the court determined the People demonstrated beyond a reasonable doubt that he was ineligible for resentencing. After noting that Bowen participated in planning the robbery, was aware that one person in his group may have used lethal force earlier that day, was physically present at the scene of the shooting, and failed to stop the shooting or aid Arce, the court found that Bowen was a major participant who acted with reckless indifference.

## DISCUSSION

Bowen argues there was insufficient evidence to support the trial court's finding that he was a major participant in the attempted robbery who acted with reckless indifference to human life. We disagree.

Due to recent amendments to the Penal Code, a participant in a specified felony is liable for murder only if the person was the actual killer, aided and abetted the actual killer, or was a major participant in the underlying felony and acted with reckless indifference to human life (§ 189, subds. (e)(1)–(3)).[3] (Stats. 2018, ch. 1015, §§ 2–4 [eliminating the natural and probable consequences doctrine and limiting the scope of the felony-murder rule].) A defendant convicted of first degree felony murder may file a petition with the sentencing court to vacate the conviction and be resentenced. (§ 1170.95, subd. (a).) Petitioners must meet three eligibility criteria: (1) the prosecution proceeded under a felony-murder theory; (2) the petitioner was convicted of first degree murder following a trial; and (3) the petitioner could

[3] Senate Bill No. 775 (2021–2022 Reg. Sess.) further amended section 1170.95 and takes effect on January 1, 2022. Those amendments do not affect our decision. The trial court relied on Bowen's resentencing hearing testimony and found beyond a reasonable doubt that Bowen was a major participant who acted with reckless disregard for human life. This is consistent with Senate Bill No. 775's amendments. (See § 1170.95, subd. (d)(3), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.)

not be convicted of first degree murder because of the changes to section 188 or 189. (§ 1170.95, subd. (a)(1)–(3); *People v. Lewis* (2021) 11 Cal.5th 952, 959.)

If the petitioner makes a prima facie case for eligibility, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subds. (c), (d)(1).) At the hearing, the prosecution must prove beyond a reasonable doubt that the petitioner is ineligible for resentencing — that the petitioner was the actual killer, aided and abetted the actual killer, or was a major participant in the underlying felony and acted with reckless indifference to human life. (§ 1170.95, subd. (d)(3); *People v. Lewis*, *supra*, 11 Cal.5th at p. 960.)

We review the trial court's order for substantial evidence. (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) " 'In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence.' " (*Williams*, at p. 663.)

**A. Major Participant**

A "major participant" has substantial personal involvement in the crime that is "greater than the actions of an ordinary aider and abettor to an ordinary felony murder." (*People v. Banks* (2015) 61 Cal.4th 788, 802 (*Banks*).) For example, a getaway driver who was not at the scene of the crime and did not intend to kill is at the lower end of the culpability spectrum. (*Id.* at p. 800.) At the other end is the actual killer or aider and

5

abettor who intended to kill.  (*Ibid*.)  Courts assess several nonexclusive factors when placing a defendant along this continuum.  Relevant factors include:  the defendant's role in planning the criminal enterprise; defendant's role in supplying or using lethal weapons; defendant's awareness of the dangers posed by the nature of the crime, weapons used, or past experience or conduct of the defendant's cohorts; defendant's presence at the scene of the killing; whether defendant was "in a position to facilitate or prevent the actual murder"; and defendant's actions after the killing.  (*Id.* at p. 803.)  No "one of these considerations is necessary, nor is any one of them necessarily sufficient" when assessing a defendant's participation in a felony.  (*Ibid*.)

Even crediting Bowen's version of the events, his actions before, during, and after the shooting establish substantial evidence exists to support the trial court's finding that he was a major participant in the underlying attempted robbery.  He agreed to commit armed robberies in San Francisco and selected Arce as a robbery target, thus establishing his significant role in planning the attempted robbery that led to Arce's murder.  (See, e.g., *In re Loza* (2017) 10 Cal.App.5th 38, 49 (*In re Loza*) [defendant a major participant, in part, by presenting idea to rob a particular gas station].)  A major participant is not, contrary to Bowen's assertions, required to have a significant, detailed plan to commit a felony.  Here, Bowen knowingly joined an ongoing conspiracy to rob people in San Francisco, beginning with the liquor store robbery and continuing to Arce, which is sufficient to establish his major participation in a felony.  (See *People v. Rodríguez* (2021) 66 Cal.App.5th 749, 770.)  There is no merit to Bowen's argument he merely intended to rob women, not Arce.  Bowen admitted to identifying Arce and the women as robbery targets.  And the trial court expressly deemed Bowen's further testimony that he only intended to rob the women as not credible.

6

We defer to that assessment here. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [deferring to the trier of fact on credibility determinations].)

In addition, Bowen was aware the attempted robbery would be dangerous based on the weapons used and his cohort's past conduct. (See *Banks*, *supra*, 61 Cal.4th at p. 803.) Bowen knew Lacy had a firearm with an extended clip and assumed it would be used during the robbery; indeed, Bowen handled the firearm. He also acknowledged hearing Davis's statement that he "put two heads on a flat" earlier that day — a phrase that meant killing people. While Bowen dismisses Davis's statement as an implausible boast, at minimum it revealed Davis's willingness to impress others by using lethal force. (See *In re Loza*, *supra*, 10 Cal.App.5th at p. 50.) Bowen nonetheless "embarked upon an armed robbery with the type of cohort who callously bragged about having shot another human being." (*Ibid*.) The fact that, per Bowen, Davis did not actually get out of the car during the shooting does not alter this conclusion, contrary to Bowen's assertions.

Bowen's physical presence at the scene of the shooting further supports a major participant finding. (See *Banks*, *supra*, 61 Cal.4th at p. 803.) Surveillance footage of the alley places Bowen 10 to 15 feet away from Arce, not 15 to 20 feet as Bowen testified. (*People v. Williams*, *supra*, 57 Cal.App.5th at p. 663 [presuming in support of the judgment the " 'existence of every fact the [trier] could reasonably have deduced from the evidence' "].) Despite Bowen's proximity to the shooting, Bowen made no attempt to restrain Lacy. He got back into the car while Lacy continued to shoot Arce. And rather than rendering aid or seeking assistance after the shooting, Bowen simply escaped with Lacy. (See *Banks*, at p. 803 [considering whether a defendant's inaction played a role in the victim's death].) He admitted he was more concerned about fleeing the authorities

7

than helping Arce. Bowen's failure to act as a restraining influence or assist Arce after the shooting increases his culpability for Arce's death. (*In re Loza*, *supra*, 10 Cal.App.5th at p. 50 ["there may be significantly greater culpability for accomplices who are present"].)

Bowen minimizes his ability to intervene, arguing he had no indication Lacy intended to shoot Arce, and he was not close enough to restrain Lacy. This is unconvincing. After Bowen heard the first gunshot, he turned to go back to the car which was parked close to Arce and Lacy. While heading to the car, he heard three to four more shots. Bowen acknowledged that Arce was shot twelve times — approximately seven additional gunshots after Bowen heard the initial shots. Based on the surveillance footage, which Bowen acknowledged was accurate, Bowen was close to Lacy. There was no evidence there was anything hindering Bowen from restraining him. (Compare with *In re Ramirez* (2019) 32 Cal.App.5th 384, 405 [defendant unable to exercise restraining effect on crime where a parking lot with parked cars were between defendant and the shooting].) Thus, the trial court could reasonably conclude that Bowen had an opportunity to restrain Lacy, but he had no intention of intervening.

Although Bowen argues he had no role in supplying or using lethal weapons during the attempted robbery, that factor is not dispositive to a major participant finding. (*Banks*, *supra*, 61 Cal.4th at p. 803.) Considering Bowen's conduct in its totality, substantial evidence supports the trial court's determination that he was a major participant.

**B. Reckless Indifference to Human Life**

"Reckless indifference to human life is 'implicit in knowingly engaging in criminal activities known to carry a grave risk of death.'" (*In re Scoggins* (2020) 9 Cal.5th 667, 676.) This concept "encompasses both subjective and

8

objective elements. The subjective element is the defendant's conscious disregard of risks known to him or her." (*People* v. *Clark* (2016) 63 Cal.4th 522, 617 (*Clark*).) The objective element examines whether the defendant's conduct " 'involved a gross deviation from the standard of conduct that a law-abiding person in the actor's situation would observe.' " (*Ibid.*) Like the major participant inquiry, courts consider several nonexclusive factors when assessing reckless indifference to human life. (*Id.* at pp. 618–623.) Those include: the defendant's use or knowledge that a gun would be used; the number of weapons ultimately used; the defendant's physical presence at the crime; the defendant's opportunity to restrain the crime or aid the victim; the duration of the felony; the defendant's knowledge of his cohort's propensity for violence or the likelihood of using lethal force; and defendant's efforts to minimize the risk of violence during the felony. (*Ibid.*) There is " 'significant[] overlap' " with the factors concerning major participation. (*Id.* at p. 615.) " '[T]he greater the defendant's participation in the felony murder, the more likely that he acted with reckless indifference to human life.' " (*Ibid.*)

Applying these factors here, we find substantial evidence supports the trial court's finding that Bowen acted with reckless indifference to human life. Bowen was aware Lacy and Mitchell were armed during the attempted robbery. He admitted handling Lacy's gun and recognized it had an extended clip, making it capable of firing more ammunition. Contrary to Bowen's assertion that he had no reason to expect Lacy would use a gun, he admitted to his assumption the gun would be used to rob people. And even under Bowen's version of events, Lacy did in fact use a gun during the robbery. Although Bowen's awareness that a cohort is armed is insufficient by itself to

9

establish reckless indifference, it is relevant to the analysis. (*In re Scoggins*, *supra*, 9 Cal.5th at p. 678; *Clark*, *supra*, 63 Cal.4th at p. 618.)

Evidence of the other *Clark* factors demonstrate Bowen's reckless indifference. As previously discussed, he was aware at least one of his co-perpetrators was dangerous and boasted of committing two killings. (*Ante,* at p. 7.) Bowen's presence at the scene of the murder gave " 'him an opportunity to act as a restraining influence on murderous cohorts,' " which he failed to do. (*Clark*, *supra*, 63 Cal.4th at p. 619.) He also failed to call for any assistance or render aid to Arce after hearing gunshots. (See *People v. Smith* (2005) 135 Cal.App.4th 914, 927–928 [reckless indifference where defendant knew victim was injured but defendant fled with the murderer rather than seeking aid].) Instead, he fled with Lacy and continued to spend time with him after the shooting as if the situation was normal. (See *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1117 [failure to help victim or call 911 and staying with the shooter for the rest of the night reflects reckless indifference].)

Considering the totality of the circumstances, substantial evidence supported the trial court's finding Bowen acted with reckless indifference to human life.[4] Bowen's discussion of the remaining *Clark* factors does not persuade us otherwise. (*Clark*, *supra*, 63 Cal.4th at p. 618 [" '[n]o one of

---

[4] During oral argument, Bowen's counsel relied at length on *In re Moore* (2021) 68 Cal.App.5th 434, but that case is inapposite. Its analysis primarily turned on the fact that the defendant was a minor. (*Id.* at p. 454.) By contrast, Bowen was 24 years old at the time of the shooting. Moreover, the circumstances of the two crimes were also different, including, for example, Bowen's ability to act as a restraining influence.

these considerations is necessary, nor is any one of them necessarily sufficient' "].)

## DISPOSITION

The order denying the section 1170.95 petition is affirmed.

11

_____
Rodríguez, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Petrou, J.

A161120

12