Opinion
 

 SIM, J.
 

 Sentenced to life in prison without the possibility of parole, defendant William Deon Proby appeals from his conviction of murder and
 
 *925
 
 other offenses, contending (1) the evidence is insufficient to support a special circumstance finding as to the felony-murder count arising from robbery, (2) the trial court erred in refusing defendant’s proposed instruction defining the scienter and participation requirements of the special circumstance allegation, and (3) the jury instruction defining reasonable doubt violated due process. We shall affirm the judgment.
 

 Factual and Procedural Background
 

 By an amended information filed in December 1995, defendant was charged with one count of first degree murder (Pen. Code, § 187),
 
 [1]
 
 eight counts of robbery (§211), five counts of assault with a deadly weapon (firearm) (§ 245, subd. (a)(2)), one count of being a convicted felon in possession of a firearm (§ 12021, subd. (a)), one count of vehicle theft (Veh. Code, § 10851, subd. (a)), and one count of eluding a peace officer while operating a motor vehicle in willful and wanton disregard for human life and property (Veh. Code, § 2800.2). It was alleged as a special circumstance that the murder was committed in perpetration and furtherance of a robbery. It was alleged with respect to all counts that a principal had been armed with a sawed-off rifle. It was alleged defendant had three prior felony convictions—one within the meaning of section 667, and two within the meaning of section 667.5, subdivision (b).
 
 [2]
 

 A jury trial was held, at which the following evidence was adduced.
 

 Stanly Zaharko testified concerning a robbery which took place on Saturday, September 17, 1994, at a McDonald’s hamburger restaurant on Watt Avenue in Sacramento, where Zaharko was the manager. Defendant and his friend Sean Vines were employees but were not working that night. Near closing time, a man emerged from the rest room with a sawed-off rifle or shotgun and commanded Zaharko to open the safe. Despite the robber’s attempt to conceal himself with a hood and scarf, Zaharko was able to identify him as employee Sean Vines. Zaharko detected a strong odor of shoe polish. The robber locked Zaharko and his staff inside a walk-in freezer. When they were able to extricate themselves a half hour later, the safe was looted and Zaharko’s truck was gone.
 

 Another robbery took place at a Florin Road McDonald’s, on September 28, 1994. Vines had worked there several months earlier. Near closing time, manager Jeff Hickey was accosted by a man pointing a sawed-off rifle at his
 
 *926
 
 face. In court, Hickey identified defendant as the man with the gun. As Hickey was opening the safe, a second robber appeared, armed with a semiautomatic handgun. After the robbers left, Hickey discovered another employee, Ron Lee, had been shot in the back of the head. The parties stipulated Mr. Lee was killed by a gunshot wound to the head.
 

 Defendant was apprehended the following day, after a high-speed chase, dining which he rammed a police car, injuring an officer.
 

 The prosecution introduced into evidence videotaped police interviews in which defendant admitted involvement in the robberies. He said he helped plan the Watt Avenue robbery. Defendant took Vines to the restaurant and applied shoe polish to Vines’s face. Defendant was afraid to go into the restaurant. He waited outside for Vines, but some mix-up apparently led to the theft of Zaharko’s truck. Defendant shared in the proceeds of the robbery.
 

 In the police interviews, defendant admitted his involvement in the Florin Road robbery but denied shooting Lee. Defendant said he heard a “pat” or pop and saw Vines kneeling on Mr. Lee’s back. It looked like Mr. Lee had been shot in the back of the head. The victim was motionless and was not bleeding at first. Then defendant saw a “pus ball” start coming out of the back of the victim’s head. Defendant and his cohort then took money (several hundred dollars) and gift certificates from the safe and left. Vines said he shot Mr. Lee because Mr. Lee recognized him. Defendant admitted he obtained the gun for Vines, though he said Vines told him the reason for needing a gun was protection against someone who had a problem with Vines.
 

 Defendant testified in his own behalf. He admitted he had previously been convicted of four felonies. He said he was involved in the Watt Avenue robbery, but he backed out at the last minute and left the scene without waiting for Vines (though he admitted assisting Vines after the robbery and receiving some money). At trial, defendant retracted the statements he made to the police about his involvement, suggesting he gave the police the answers they wanted.
 

 On the witness stand, defendant recanted his admission to police that he was present at the Florin Road robbery. He testified he told police he was present because he thought it would be more credible than just saying Vines told him about the crime after the fact. Defendant said he lied to the police because he knew the high-speed chase was a felony, he was concerned about the three strikes law, and he was trying to get a deal. He claimed he dropped
 
 *927
 
 Vines off at a friend’s apartment early in the evening of the Rorin Road robbery. Later, when defendant returned to the friend’s apartment, the robbery had already taken place, and it was Vines who brought the loot to the home of defendant’s girlfriend.
 

 In June 1996, the jury found defendant guilty of first degree murder in the commission of a robbery (special circumstance), eight counts of armed robbery, five counts of assault with a firearm, one count of felon in possession of a firearm, one count of misdemeanor joyriding (as a lesser included offense of the charged vehicle theft), and one count of eluding a peace officer. The jury also found the arming enhancements true as to all counts. Defendant waived a jury trial on the prior convictions, which were found true by the trial court.
 

 In August 1996, the trial court ordered defendant to serve a life term without the possibility of parole for the murder of Mr. Lee. The court also sentenced defendant to 38 years for the other offenses and prior conviction enhancements and imposed restitution fines.
 

 Discussion
 

 I.
 
 Sufficiency of the Evidence
 

 Defendant contends there is insufficient evidence that he acted as a “major participant” with “reckless indifference to human life,” as required to support the special circumstance that the murder of Mr. Lee was committed in furtherance of the Florin Road robbery. We disagree.
 

 In order to support a finding of special circumstances murder, based on murder committed in the course of robbery, against an aider and abettor who is not the actual killer, the prosecution must show that the aider and abettor had intent to kill or acted with reckless indifference to human life while acting as a major participant in the underlying felony. (§ 190.2, subds. (c), (d).)
 
 [3]
 

 Subdivision (d) of section 190.2, concerning reckless indifference, “was added by Proposition 115 in order to bring the death penalty into conformity
 
 *928
 
 with
 
 Tison
 
 v.
 
 Arizona
 
 (1987) 481 U.S. 137, 158 [95 L.Ed.2d 127, 144 .. . ]. [Citation.]
 
 Tison
 
 held that the death penalty may be imposed in a case of ‘major participation in the felony committed, combined with reckless indifference to human life.’ Put another way,
 
 Tison
 
 held ‘that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.’ [Citation.]”
 
 (People
 
 v.
 
 Bustos
 
 (1994) 23 Cal.App.4th 1747, 1753 [29 Cal.Rptr.2d 112], fn. omitted.) The term “reckless indifference to human life” means “subjective awareness of the grave risk to human life created by his or her participation in the underlying felony.”
 
 (People
 
 v.
 
 Estrada
 
 (1995) 11 Cal.4th 568, 578 [46 Cal.Rptr.2d 586, 904 P.2d 1197].)
 

 Here, the prosecution’s theory was that defendant was a major participant who acted with reckless indifference to human life. The jury was instructed on defendant’s liability for first degree murder as an aider and abettor under the felony murder rule, and the jury was told it could find true the special circumstance allegation if defendant with reckless indifference to human life and as a major participant aided or abetted the commission of the robbery which resulted in the death of a human being. The prosecution’s evidence and closing argument advanced the theory that Vines was the shooter, and defendant was liable on the theory he aided and abetted the Florin Road robbery as a major participant and with reckless indifference to human life.
 

 “The proper test to determine a claim of insufficient evidence in a criminal case is whether, on the entire record, a rational trier of fact could find appellant guilty beyond a reasonable doubt. [Citations.] In making this determination, the appellate court ‘ “must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.” . . . “Our task ... is twofold. First, we must resolve the issue in the light of the
 
 whole record
 
 .... Second, we must judge whether the evidence ... is
 
 substantial
 
 . . .
 
 (People
 
 v.
 
 Barnes
 
 (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110], original italics.)
 

 In
 
 People
 
 v.
 
 Bustos, supra,
 
 23 Cal.App.4th 1747, the codefendant Lorretto claimed there was insufficient evidence he acted with reckless indifference to human life during the robbery of a woman in a rest room at a Malibu
 
 *929
 
 beach, where his cohort Bustos killed the woman with a knife. Lorretto entered the rest room alone and unarmed to rob the victim but knew that Bustos was waiting outside with a knife.
 
 (Id.
 
 at pp. 1751, 1754.) Although it was Bustos who ran in and stabbed the woman twice when she resisted, the two men planned the robbery together and previously participated in a robbery together in another state.
 
 (Ibid.)
 
 The two men fled together with the robbery loot, leaving the victim to die.
 
 (Id.
 
 at pp. 1754-1755.) The court concluded, “The evidence supports the finding that Loretto was a major participant who acted with reckless indifference to human life.”
 
 (Id.
 
 at p. 1755.)
 

 People
 
 v.
 
 Mora
 
 (1995) 39 Cal.App.4th 607 [46 Cal.Rptr.2d 99], determined the special circumstance was satisfied where the defendant helped plan the robbery and was instrumental in arranging for his coparticipant to enter the victim’s home with a rifle.
 
 (Id.
 
 at p. 617.) The defendant said he did not intend the victim to be killed. When the victim was shot, the defendant did not know whether he was dead or alive. He did not attempt to aid the victim but instead carried through with the plan to steal and carried the loot away, leaving the victim there to die and threatening the remaining victim.
 
 (Ibid.)
 

 Here, defendant and Vines were both armed robbers actively participating in the execution of the Florin Road McDonald’s robbery. Defendant provided Vines with a gun. Vines shot Mr. Lee in the back of the head. Defendant saw Mr. Lee with “pus” oozing out of his head but made no attempt to assist or determine if the victim was still alive. Instead, defendant and Vines went to the safe, took the money and left. Also, as evidence of defendant’s awareness of the risk, defendant and Vines participated in an armed robbery together only a few days earlier, at the Watt Avenue McDonald’s (as found by the jury). Even accepting that defendant waited outside, he admitted he expected the Watt Avenue employees would be trapped in the walk-in freezer for five hours, until the morning manager arrived (though he claimed he did not think this would hurt them). Thus, contrary to defendant’s claim, he knew of Vines’s willingness to do violence. Defendant also knew Vines had worked at the Florin Road McDonald’s. Thus, there was a chance Vines would be recognized, increasing the risk of violence in order to evade apprehension.
 

 This evidence was sufficient to support the jury’s special circumstance finding that the murder was committed in furtherance of the robbery, that defendant was a major participant, and that he acted with a reckless indifference to human life.
 

 Defendant points out this case differs from
 
 Bustos
 
 because there Loretto witnessed the killing and here defendant did not. Also, defendant says
 
 *930
 
 (contrary to the People’s assertion) that he did not enter with Vines, because defendant entered by a side door and remained near the rest room until after the shooting. And defendant considers himself more passive than the robber in
 
 Bustos,
 
 who “was actually perpetrating the strong-armed robbery.” Nevertheless, despite these distinctions, the facts in this case still add up to defendant’s being a major participant with a reckless indifference to human life.
 

 With respect to the evidence that defendant and Vines had committed a prior robbery together, defendant suggests this fact actually operates in his favor because his role in the first robbery was minor, and no one got killed in the first robbery, so defendant had no reason to think Vines was violent. However, the first robbery certainly gave defendant notice of Vines’s willingness to harm people, because defendant knew Vines locked the employees in the walk-in freezer with the expectation they would be trapped there for five hours (though defendant claimed he did not think that would hurt them). We therefore disagree that the prior robbery is a fact in defendant’s favor.
 

 With respect to the evidence that defendant gave Vines the gun used to kill Mr. Lee, defendant states the gun was obtained weeks earlier for another purpose. However, his citation to the record shows he got the gun for Vines not “weeks earlier,” but around the time of the Watt Avenue McDonald’s robbery (which was 11 days before the Florin Road robbery). Defendant told police he arranged to get the gun for Vines because Vines said he was having trouble with somebody and needed protection. However, the jury was not required to believe defendant’s explanation as to why he got the gun for Vines.
 

 Defendant cites
 
 Tison
 
 v.
 
 Arizona
 
 (1987) 481 U.S. 137 [107 S.Ct. 1676, 95 L.Ed.2d 127], for the proposition that merely being armed during a robbery is insufficient to establish the reckless indifference element, even though the possibility of bloodshed is inherent in the commission of the robbery. However, not only was defendant armed, he provided the gun to the shooter. Also, defendant made no attempt to assist the victim who was shot but just went on looting the safe and left the premises.
 

 Defendant claims his case is similar to a Florida state court case
 
 (Jackson
 
 v.
 
 State
 
 (Fla. 1991) 575 So.2d 181) which found insufficient evidence of reckless indifference to human life. However, we decline to apply Florida case law to this case.
 

 Defendant claims there is insufficient evidence that he was a “major participant,” under the common dictionary meaning of “major” as being
 
 *931
 
 “greater in dignity, rank, importance, interest, number, quantity or extent.” He claims a major participant is one such as a triggerman or ringleader whose participation was of greater importance than the other participants. We disagree, however, because the common meaning of “major” also includes “notable or conspicuous in effect or scope" and “one of the larger or more important members or units of a kind or group.” (Webster’s New Internat. Dict. (3d ed. 1971) p. 1363.) Although defendant’s cited authority,
 
 People
 
 v.
 
 Marshall
 
 (1990) 50 Cal.3d 907, 938 [269 Cal.Rptr. 269, 790 P.2d 676], indicated the triggerman and ringleader were major participants,
 
 Marshall
 
 did not hold these activities established a minimum threshold for a “major participant.” We address this further
 
 post,
 
 in our discussion of the contention of instructional error.
 

 We disagree with defendant’s implication that his receipt of only 20 percent of the Florin Road loot makes him a minor participant.
 

 We conclude the evidence was sufficient to support the jury’s special circumstance finding that the murder was committed in furtherance of the robbery, that defendant was a major participant, and that he acted with a reckless indifference to human life.
 

 II.
 
 Jury Instruction on Special Circumstance
 

 Defendant contends the trial court erred in refusing his request to instruct the jury with a modified version of CALJIC No. 8.80.1, concerning the scienter and participation requirements of the special circumstance allegation. Defendant claims his version, taken from Forecite, (1) had a “subjective appreciation” component which is required by law but missing from CALJIC, and (2) defines “major participant.” We find no error.
 

 The trial court instructed the jury with CALJIC No. 8.80.1 (1996 rev.), as follows:
 

 “If you find the defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true:
 

 “The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.
 

 “If you find that a defendant was not the actual killer of a human being, you cannot find the special circumstance to be true unless you are satisfied
 
 *932
 
 beyond a reasonable doubt that such defendant with reckless indifference to human life and as a major participant, aided, abetted, or assisted in the commission of the crime of robbery ([§] 211) which resulted in the death of a human being, namely Ronald Lee.
 

 “A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involve a grave risk of death to an innocent human being.”
 

 The trial court rejected defendant’s request to instruct the jury with a modified version, taken from Forecite. Defendant acknowledges on appeal that his proposed instruction is not part of the record. He requested correction of the record for this appeal, but the trial court responded that all refused instructions had been filed in the record. Defendant asks us to take judicial notice of the 1994 second edition version of the Forecite instruction. Without doing so, we shall assume for the sake of argument that the wording set forth in defendant’s appellate brief is the same wording he proposed to the trial court. That wording is as follows:
 

 “To find that a special circumstance is true, it must be proved:
 

 “1. That the murder was committed while the defendant was engaged in the commission or attempted commission of a robbery and/or burglary; and
 

 “2. The murder was committed in order to carry out or advance the commission of the crime of robbery and/or burglary; and
 

 “3. The defendant acted not only as an aider and abettor in the commission of the robbery and/or burglary (as that phrase is defined in an earlier instruction, CJ 3.01), but that [he] [she] acted as a major participant in the underlying crime; and
 

 “4. That the defendant, subjectively appreciating that [his] [her] acts were likely to result in the taking of innocent life, nonetheless engaged in criminal activities known to carry a high probability of death.
 

 “A major participant is one such as the ringleader or the actual killer whose participation was greater in importance than that of the other participant[s], . . .”
 

 Defendant contends this Forecite instruction was necessary because, unlike the CALJIC instruction, the Forecite instruction (1) required a finding of subjective appreciation of the risk to life, and (2) defined “major participant.”
 

 
 *933
 
 However, as to the first point—subjective appreciation—the CALJIC instruction
 
 did
 
 convey that requirement, though it did not use those words. Thus, the jury was instructed, “A defendant acts with reckless indifference to human life when that defendant knows or is aware that his acts involve a grave risk of death to an innocent human being.”
 

 Moreover, this issue has been addressed by the Supreme Court and decided adversely to defendant. Thus, in
 
 People
 
 v.
 
 Estrada, supra,
 
 11 Cal.4th 568, the jury was instructed with CALJIC No. 8.80.1. (11 Cal.4th at p. 573.) On appeal, the defendant argued the CALJIC instruction was deficient because it failed to make clear that a defendant must subjectively appreciate that his acts were extremely likely to result in the death of an innocent human being.
 
 (Id.
 
 at p. 577.) The Supreme Court disagreed, stating “. . . we conclude the generally accepted meaning of the phrase, ‘reckless indifference to human life,’ in common parlance amply conveys to the jury the requirement of a defendant’s subjective awareness of the grave risk to human life created by his or her participation in the underlying felony.”
 
 (Id.
 
 at p. 578.)
 

 In
 
 Estrada,
 
 there was no request for further instruction in the trial court, and the Supreme Court was dealing with the contention that the trial court had a sua sponte duty. Here, there was a request for instruction. However, the Supreme Court indicated that upon a defense request for a clarifying instruction, the trial court should instruct that reckless indifference refers to a grave risk of death.
 
 (People
 
 v.
 
 Estrada, supra,
 
 11 Cal.4th at p. 580.) The 1996 revision of CALJIC 8.80.1, which was given to the jury in this case, incorporates the “grave risk” language.
 

 We thus see no error with respect to the subjective appreciation element.
 

 With respect to defendant’s contention that the Forecite instruction was needed for its definition of “major participant,” we disagree.
 

 “When a word or phrase ‘ “is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.” ’ ”
 
 (People
 
 v.
 
 Estrada, supra,
 
 11 Cal.4th at p. 574.)
 

 In this context, we believe the phrase “major participant” is commonly understood and is not used in a technical sense peculiar to the law. The common meaning of “major” includes “notable or conspicuous in effect or
 
 *934
 
 scope” and “one of the larger or more important members or units of a kind or group.” (Webster’s New Internat. Diet.,
 
 supra,
 
 p. 1363.)
 

 Defendant did request an instmetion which would have defined major participant. However, we disagree with the definition of “major participant” in the Forecite instruction. It is too narrow. It would require in this case a finding that defendant was a “ringleader” “whose participation was greater in importance than that of other participants.” We see no reason to impose such a restriction on the definition of major participant, and defendant provides us with no argument supporting such a restriction. He suggests this definition is supported by two
 
 cases—People
 
 v.
 
 Marshall, supra,
 
 50 Cal.3d 907, and
 
 People
 
 v.
 
 Keenan
 
 (1988) 46 Cal.3d 478, 504 [250 Cal.Rptr. 550, 758 P.2d 1081]. We disagree.
 
 Marshall
 
 merely indicated, in connection with a contention concerning intracase disporportionality, that two defendants who were the triggerman and the ringleader were major participants.
 
 (People
 
 v.
 
 Marshall, supra, 50
 
 Cal.3d at p. 938.) This does not mean or support the position that the definition of major participant is limited to such actors. In
 
 Keenan,
 
 the Supreme Court said no intent-to-kill finding was necessary to satisfy the Eighth Amendment.
 
 (People
 
 v.
 
 Keenan, supra,
 
 46 Cal.3d at p. 504.) It was conceded the defendant personally inflicted the fatal wound (by shooting the robbery victim).
 
 (Id.
 
 at p. 503.) The Supreme Court accordingly made a finding that the defendant was the actual killer.
 
 (Id.
 
 at p. 504.) In a footnote, the Supreme Court said the evidence also overwhelmingly supported alternative findings that the defendant killed intentionally or was a major participant, with reckless indifference to life, in a felony leading to death.
 
 (Id.
 
 at p. 504, fn. 9.)
 
 Keenan
 
 does not support defendant’s proposal for a restrictive definition of major participant.
 

 We note the Forecite instmetion relies on the common dictionary meaning of “major” as “greater in dignity, rank, importance, interest, number, quantity or extent.” (Webster’s New Collegiate Diet. (3d ed. 1965) p. 510.) However, as we have indicated, the common dictionary meaning of “major” also includes “notable or conspicuous in effect or scope” and “one of the larger or more important members or units of a kind or group.” (Webster’s New Internat. Diet.,
 
 supra,
 
 p. 1363.)
 

 We conclude the trial court did not err in refusing to instruct the jury as proposed by defendant.
 

 IE.
 
 CALJIC No. 2.90
 

 *
 

 
 *935
 
 Disposition
 

 The judgment is affirmed.
 

 Puglia, P. J., and Raye, J., concurred.
 

 A petition for a rehearing was denied February 5, 1998, and appellant’s petition for review by the Supreme Court was denied April 15, 1998.
 

 [1]
 

 Undesignated statutory references are to the Penal Code.
 

 [2]
 

 Another defendant named in the information, Sean Venyette Vines, was separately tried and is not a party to this appeal.
 

 [3]
 

 Section 190.2 provides in part: “(c) Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall be punished by death or imprisonment in the state prison for life without the possibility of parole if one or more of the special circumstances enumerated in subdivision (a) [e.g., murder during commission of robbery] has been found to be true under Section 190.4.
 

 “(d) Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which results in the death of some person or persons, and who is found
 
 *928
 
 guilty of murder in the first degree therefor, shall be punished by death or imprisonment in the state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of subdivision (a) has been found to be true under Section 190.4."
 

 *
 

 See footnote,
 
 ante,
 
 page 922.