Filed 10/1/14  P. v. Salazar CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B248963 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County<br> Super. Ct. No. BA376429) |
| MIGUEL SALAZAR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bob S. Bowers, Jr., Judge.  Affirmed as Modified.

Jeralyn Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Miguel Salazar of first degree murder (Pen. Code, § 187, subd. (a))[1] and carjacking (§ 215, subd. (a)), and found true the special circumstance allegation that the murder was committed during the commission of carjacking (§ 190.2, subd. (a)(17)(L)). The trial court sentenced defendant to life in prison without the possibility of parole for the special circumstance murder, and a term of five years for the carjacking, stayed under section 654.

Defendant appeals from the judgment. As we explain more fully below, we reject defendant's claims of insufficient evidence, instructional error, and ineffective assistance of counsel. We order the parole revocation fine in the minute order from the sentencing hearing stricken. In all other respects, we affirm the judgment.


## BACKGROUND

Around 3:49 a.m. on June 17, 2007, in the parking lot of a strip mall at the corner of Vernon and Wall in Los Angeles, defendant and an accomplice, Enrique Reyes, carjacked Renee Aguilar of his Daewoo automobile. Aguilar was killed when, after the carjackers entered the vehicle, the car knocked him down and drove over him, inflicting fatal blunt force trauma injuries. Not until 2010 was defendant identified as a suspect. He was located in Baltimore, Maryland, and transported back to Los Angeles to be charged.

A surveillance video from a laundromat at the strip mall where the killing occurred captured the crime. The video, which was not of sufficient quality to identify the participants, was played for the jury, and still photographs taken from

---

[1] All section references are to the Penal Code.

2

the video were introduced into evidence. As narrated by Los Angeles Police Detective Miguel Terrezas, the video showed two unidentified men approach Aguilar's vehicle and loiter nearby. A few seconds later, a person (later identified as Aguilar) exited the vehicle, and appeared to struggle with one of the men. Aguilar moved to the side of the front passenger door of the vehicle, raising his hand and holding his head. As the car started into reverse and turned, the front end appeared to strike Aguilar and knock him down. The vehicle then appeared to rise as if running over something, after which it moved forward, again rising as if running over something, though from the video one could not see precisely what it ran over. The vehicle then drove off.

Detective Terrezas responded to the scene of the homicide in response to a radio call that there had been a shooting. Once at the location, he learned that the victim had been run over. On the ground he found a "car club" used to prevent vehicle theft, car keys, a flat head screwdriver, and blood.

Anabel Correa, defendant's then-girlfriend, was with defendant and Reyes before the crime. Reyes suggested to defendant that they steal someone's car. Correa urged defendant not to go, but accompanied him when he went with Reyes to Vernon and Wall. She saw them go to the parking lot of the strip mall, and perhaps 15 or 20 minutes later heard screeching noises. Later that morning, Correa asked defendant what had happened. He told her that he and Reyes "were there trying to get the car from the man." She then testified that defendant became angry and told her "they ran over a man. That's all I can remember." Shown a report of a prior statement she made to the police, she "refresh[ed her recollection] as to what [defendant] said . . . when [she was] asking him questions about" the incident. After refreshing her recollection, she testified that defendant said, "You . . . bitch, I ran over the man."

3

The parties stipulated that if called as a witness, Reyes (who was refusing to leave his cell to come to court) would testify that an audio recording played for the jury with the assistance of a transcript was a true and accurate depiction of an interview with the prosecutor on December 20, 2012.  In that interview, Reyes remembered that three years earlier, he had told the prosecutor that "[defendant] was the driver and I was just the passenger."  He remembered having said that they "agreed to get into the car . . . and [defendant] was just supposed to jump into the driver's seat and take off . . . [b]ut homeboy started to fight back."  Reyes told the prosecutor that if called as a witness, he would admit that he made these statements, but did not want to say anything more, because he did not "want to incriminate [himself] up [s]tate" where he was housed in prison.

## DISCUSSION

I.  *Sufficiency of the Evidence/Instructional Error*

The court's instructions on the felony-murder special circumstance allegation erroneously stated that if the prosecution failed to prove that defendant was the actual killer, then the jury could not find the felony-murder special circumstance to be true unless it found that defendant "*with the intent to kill* aided, abetted, or assisted any actor in the commission of the murder in the first degree." (Italics added.)[2]  The instruction was incorrect, because the felony-murder special

---

[2]    As for the special circumstance allegation, the court first gave a modified version of CALJIC No. 8.80.1, as follows:  "If you find the defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true:  That the murder was committed while engaged in the commission of the crime of carjacking in violation of Penal Code section 190.2(a)(17)(L).  [¶]  The People have the burden of proving the truth of a special circumstance.  If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true.  [¶]  *If you find that a defendant was not the actual killer of a human being, or if you*

4

circumstance applies to "a person other than the actual killer . . . if that person was a major participant in the underlying felony . . . and *either* intended to kill *or acted with reckless indifference to human life*." (*People v. Cleveland* (2004) 32 Cal.4th 704, 752, italics added.) Neither of those mental states is required for the actual killer. (*People v. Contreras* (2013) 58 Cal.4th 123, 163-164 ["[t]he felony-murder special circumstance . . . is valid absent any requirement that a defendant who actually killed during an enumerated felony acted with the intent to kill"; also disagreeing with the contention that "to withstand constitutional scrutiny, the felony-murder special circumstance . . . minimally requires a finding of 'reckless indifference to human life' for actual killers lacking an intent to kill."].)

Seizing upon the error in the special circumstance instruction, and characterizing the issue as one of insufficiency of the evidence, defendant contends that the special circumstance finding must be reversed, because the evidence was insufficient to prove that he (as the purported passenger in the carjacked vehicle, not the driver) acted with the intent to kill Aguilar. We disagree.

---

*are unable to decide whether the defendant was the actual killer or an aider and abettor, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree.* [¶] In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously." (Italics added.)

The court then instructed pursuant to CALJIC No. 8.81.17: "To find that the special circumstance referred to in these instructions as murder in the commission of carjacking is true, it must be proved: [¶] 1. The murder was committed while the defendant was engaged in the commission of a carjacking; and [¶] 2. The murder was committed in order to carry out or advance the commission of the crime of carjacking or to facilitate the escape therefrom or to avoid detection. In other words, the special circumstance referred to in these instructions is not established if the carjacking was merely incidental to the commission of the murder."

First, to the extent the issue may be viewed as one of insufficiency of the evidence, it fails because "[w]here the jury considers both a factually sufficient and a factually insufficient ground for conviction, and it cannot be determined on which ground the jury relied, we affirm the conviction unless there is an affirmative indication that the jury relied on the invalid ground." (*People v. Marks* (2003) 31 Cal.4th 197, 233 (*Marks*).) Here, consistent with the evidence provided by Reyes and Correa, the prosecutor's primary theory was that defendant was the actual killer – the driver of the carjacked vehicle. Under that theory, the prosecution was not required to prove that defendant acted with an intent to kill (or reckless disregard for life) in order to sustain the special circumstance.

Substantial evidence clearly supported the conclusion that defendant was the driver. In an interview with the prosecutor (the contents of which were admitted by stipulation), Reyes remembered having told the prosecutor in a prior interview that "[defendant] was the driver and I was just the passenger." He also remembered having said that they "agreed to get into the car . . . and [defendant] was just supposed to jump into the driver's seat and take off . . . [b]ut homeboy started to fight back." Reyes told the prosecutor that if called as a witness, he would admit that he made these statements, but did not want to say anything more, because he did not "want to incriminate [himself] up [s]tate" where he was housed in prison. Similarly, Correa testified that defendant became angry when she asked him what happened, and all she could remember him saying was that "they ran over a man." However, she refreshed her recollection from a prior written statement and clarified that defendant had said, "You . . . bitch, I ran over the man."

Thus, there was ample evidence from which the jury could conclude that defendant was the actual killer of Aguilar. As we have noted, if the jury convicted

6

defendant of first degree murder on that ground, no additional finding that defendant intended to kill (or acted with reckless indifference to life) was required to sustain the special circumstance. (*People v. Contreras, supra,* 58 Cal.4th at pp. 163-164.)

It is true that the prosecutor also argued the jury could conclude that defendant was the passenger in the vehicle, but nonetheless convict him of first degree murder as an aider and abettor of the carjacking, or as a coconspirator in that crime.[3] It is also true that if the jury had a reasonable doubt whether defendant was the actual killer, the jury instructions on the special circumstance purported to require a finding that defendant aided and abetted the murder with the intent to kill. But because the record does not disclose which theory the jury relied on, it is enough that the evidence supports the theory that defendant was the actual killer. On that basis, the special circumstance finding must be affirmed, regardless of defendant's claim that the evidence was insufficient to support the finding against the defendant on an aiding and abetting theory. (*Marks, supra,* 31 Cal.4th at p. 233.)

Second, the issue raised by defendant is more properly viewed not as one of insufficient evidence, but of instructional error in failing to instruct that for a person other than the actual killer, the special circumstance required proof that defendant was a major participant in the underlying felony who acted *either* with an intent to kill *or* with reckless disregard for human life. However, this error,

---

[3] The trial court instructed the jury on premeditated first degree murder, second degree murder, and first degree felony murder (murder during the commission of carjacking). In connection with the felony-murder rule, the court instructed on the vicarious liability of an aider and abettor in the underlying carjacking, and on conspiracy liability in relation to the carjacking.

which placed a greater burden on the prosecution than the law requires, could not have possibly prejudiced defendant.

Driver or not, the defendant was necessarily a major participant in the carjacking and acted with reckless indifference to human life. A "major participant" in a carjacking is one who plays a "notable or conspicuous" part or is one of the "more important members" of the group committing the crime. (*People v. Proby* (1998) 60 Cal.App.4th 922, 930-931 [involving robbery murder].) Here, along with Reyes, defendant was one of only two persons who committed the carjacking. They conspired to commit the crime beforehand, carried it out together, and fled in the carjacked vehicle together. Thus, there is no doubt that defendant was a major participant in the crime.

Assuming for the sake of argument that defendant was the passenger when Aguilar was struck and run over, defendant's participation in the carjacking also demonstrated reckless indifference to human life. The phrase "reckless indifference to human life" means a "subjective awareness of the grave risk to human life created by [defendant's] participation in the underlying felony." (*People v. Estrada* (1995) 11 Cal.4th 568, 578.) As the United States Supreme Court has observed, the "reckless indifference" and "major participant" requirements often overlap. "[T]here are some felonies as to which one could properly conclude that any major participant necessarily exhibits reckless indifference to the value of human life. Moreover, even in cases where the fact that the defendant was a major participant in a felony did not suffice to establish reckless indifference, that fact would still often provide significant support for such a finding." (*Tison v. Arizona* (1987) 481 U.S. 137, 158, fn. 12.)

As presented at trial, the surveillance video showed that the carjackers loitered near the vehicle while Aguilar was inside. When he emerged, a struggle

8

ensued between Aguilar and one of the carjackers. Aguilar moved to the side of the front passenger door of the vehicle, raising his hand and holding his head. As the car (with both carjackers inside) started into reverse and turned, the front end struck Aguilar and knocked him down. Without stopping, the vehicle then appeared to rise, running over Aguilar, after which it moved forward, running over him again, and drove off.

This evidence leaves no room for argument that defendant (as the purported passenger) was unaware that his participation in the carjacking created a grave risk to Aguilar's life. (*People v. Estrada, supra,* 11 Cal.4th at p. 578.) He had conspired with Reyes to commit the crime, had loitered while Aguilar remained in the car, and at the very least was present when control of the vehicle was wrested from Aguilar by force, even if he himself did not engage in the struggle with Aguilar. Aguilar was standing on the front passenger side of the vehicle, the area of the vehicle where defendant (as the purported passenger) was seated, when the vehicle, traveling in reverse, knocked Aguilar down, ran over him, and then ran over him again as it moved forward. Under these circumstances, defendant, seated in the passenger side of the vehicle, undoubtedly was aware of the vehicle striking and running over Aguilar, and thus was also aware that his participation in the ongoing carjacking created a grave risk to Aguilar's life.

In short, defendant cannot benefit from the error in the special circumstance instruction, because beyond any reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18) that error did not contribute to the true finding on the special circumstance finding. A properly instructed jury would necessarily have found the special circumstance allegation true.

9

## II. *Ineffective Assistance of Counsel*

In closing argument, the prosecutor argued that defendant was guilty of first degree murder under the felony-murder rule, the killing having occurred during the commission of a carjacking, and argued that the evidence proved that defendant was the driver of the vehicle. However, he noted that the jury could believe that defendant was vicariously liable for the murder as an aider and abettor of the carjacking or coconspirator in the carjacking. The prosecutor stated that if the jury believed defendant was guilty of first degree murder committed in the course of a carjacking under any of these theories, then it must find the special circumstance to be true.

Defendant contends that his trial counsel was ineffective for failing to object to the prosecutor's argument that conviction of first degree murder under the felony-murder rule also required a true finding on the felony-murder special circumstance, without any finding that defendant, as the purported passenger in the carjacked vehicle, either intended to kill or was a major participant in the carjacking and acted with reckless indifference to human life. However, for reasons already discussed, it is not reasonably probable that if defense counsel had objected, a different result would have been reached. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 (*Strickland*) ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."].) As we have explained, ample evidence proved that defendant was the driver of the vehicle (for whom no additional mental state beyond that required for carjacking was required for the special circumstance), and the evidence also left no doubt that, at a minimum, defendant was a major participant in the carjacking and acted with reckless indifference to human life. Thus, it is not reasonably probable that any

10

misstatement of the law by the prosecutor affected the special circumstance finding.  (*Strickland, supra,* 466 U.S. at p. 694.)

III.  *Parole Revocation Fine*

Given defendant's sentence of life without the possibility of parole, he was not eligible for imposition of a parole revocation fine under section 1202.45.  At the oral sentencing proceeding on May 16, 2013, the trial court did not order such a fine, but a clerical error appears in the minute order from the sentencing hearing reflecting imposition of a $300 parole revocation fine.  Defendant contends, and respondent concedes, that the fine must be stricken.  We agree, and order the parole revocation fine appearing in the minute order of May 16, 2013 stricken.

**DISPOSITION**

The superior court clerk is directed to delete the $300 parole revocation fine that appears in the minute order from the sentencing proceeding on May 16, 2013, and to forward the corrected minute order to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.                    EDMON, J.*

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11