Filed 3/25/15  P. v. Felix CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ALFREDO FELIX,<br><br>    Defendant and Appellant. | D066686<br><br><br>(Super. Ct. No. SWF1100211) |

APPEAL from a judgment of the Superior Court of Riverside County, Mark A. Mandio, Judge.  Affirmed.

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Heather F. Crawford, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Alfredo Felix guilty of first degree murder and robbery and found true a special circumstance that he committed the murder while engaged in

the commission of a robbery. The court sentenced Alfredo to life without the possibility of parole for the murder conviction and special circumstance finding and the upper term of five years on the robbery conviction. Alfredo contends insufficient evidence corroborated an accomplice's testimony and supported the true finding on the robbery-murder special circumstance. He also asserts the prosecutor committed misconduct by violating an in limine ruling barring any mention of the outcome of an earlier trial of his brother, Fabian Felix. We find Alfredo's arguments unavailing and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On October 3, 2005, Fabian rented a Dodge Magnum vehicle. (Undesignated date references are to the year 2005.) The next day, Fabian, Alfredo and their cousin, Cristobal D'Arte, drove south from Waterford to Hemet, California to visit Juan Molina who had asked Fabian to bring down marijuana. Molina was married to Fabian's and Alfredo's sister.

Molina testified that on October 4, Fabian called him and said that he was on the road on his way down to Hemet. In the early afternoon, Fabian, Alfredo and D'Arte arrived at Molina's apartment in the Dodge Magnum. Fabian did not have any marijuana with him, but told Molina he was meeting with someone to get it. The four men discussed a plan for getting the marijuana. Fabian and Alfredo were going to meet with a person who had marijuana and rob him. They expected the victim to have twenty pounds of marijuana on him.

2

Based on the plan, Fabian and Alfredo were going to meet with the victim and convince him to get into their car with the marijuana. D'Arte and Molina were supposed to wait for them at an apartment complex on Cawston Avenue. Once Fabian, Alfredo and the victim were parked at the apartment complex, the plan was for D'Arte and Molina to pull the victim out of the car and fight with him while Fabian and Alfredo drove off with the marijuana. During the discussion about the plan, Fabian and Alfredo each pulled out .45 caliber handguns.

That same day, when Fabian and Alfredo left Molina's apartment, Molina and D'Arte drove to the apartments on Cawston Avenue and parked. After waiting for some time, Molina saw the Dodge Magnum arrive and park. Molina and D'Arte approached the rear side of the Dodge.

Molina saw Alfredo, who was seated in the rear passenger-side seat, grab the victim in the front passenger seat around the neck and put a gun to his head. Molina also saw Fabian, who was in the driver's seat, turn toward the victim. Molina then heard a shot. The passenger door opened and the victim fell out of the car. Alfredo then got into the front passenger seat and D'Arte jumped into the back seat. As the Dodge backed up, Molina ran to his car and returned to his apartment.

Alfredo, Fabian and D'Arte arrived at Molina's apartment approximately five minutes after Molina. Alfredo and Fabian were both upset about the shooting. Fabian left that day but Alfredo stayed the night at Molina's apartment.

3

On the day of the shooting, several residents of the Cawston Avenue apartments saw the Dodge at the apartment complex. Residents also saw two men approach the car, heard a shot and then saw the victim fall out of the parked car. They then saw one of the two men who had approached the car get into it and the other man run away. Residents then observed the Dodge speed out of the apartment complex driveway.

Officers were dispatched to the location of the shooting at 4:41 p.m. Officer Derek Maddox found the victim lying on his back in a flower bed. The victim had died from a gunshot wound. If the victim had been in the front passenger seat, his wound was consistent with being shot from close proximity on the left side.

Police arrested Fabian in July 2006 and prepared a wanted poster for Alfredo. The poster included Alfredo's picture, date of birth, and physical characteristics. It also stated, "[Alfredo], along with his brother and cousin, were involved in a 20 [pound] marijuana drug rip off with the victim of this case. The victim was shot to death with a .45 caliber handgun during this incident."

The Kern County Sheriff's special operations group located Alfredo in January 2011. When Deputy Raul Murrillo initially asked Alfredo his name, Alfredo identified himself as "Rafael." When asked again, Alfredo repeated his name was "Rafael." When asked if his name was Alfredo, Alfredo responded that it was not. Deputy Murrillo showed Alfredo the wanted poster with Alfredo's picture and asked Alfredo yet again if he was Alfredo Felix. Alfredo looked at the

4

poster, shook his head to suggest "no" and then put his head down. Police found no information connecting the name "Rafael" with Alfredo.

DISCUSSION

## I. *Motion Regarding Respondent's Brief*

On January 13, 2015, Alfredo, in propria persona, filed a motion entitled "Motion Pursuant to *People v. Marsden*." In that motion, Alfredo complained about his appellate counsel's willingness to allow the Attorney General to file a late respondent's brief. Alfredo requests that we find the Attorney General is time barred from filing a brief. However, the Attorney General filed its respondent's brief on May 23, 2014, nearly eight months before Alfredo's motion. Alfredo did not file a reply brief. Moreover, we granted both parties in this case multiple extensions of time for filing briefs. The last extension permitted the Attorney General to file its brief by June 4, 2014. The Attorney General complied with that order. We see no reason to strike the Attorney General's brief. Accordingly, Alfredo's motion is denied.

## II. *Sufficiency of the Corroborating Evidence*

A. Additional Background

Police found a set of keys next to the victim's foot. The keys unlocked a truck that had been reported abandoned in Hemet about three to four miles from the shooting scene. Police found two cell phones in the truck. One of those phones showed an August 20 call from a cell phone registered to Alfredo's wife,

Christina Cervantes. Cervantes had two cell phones registered in her name, one with a number ending in 7780 and the other in 7790.

Cell phone records showed frequent communication between Fabian's phone and the cell phones ending in 7780 and 7790. The cell phone records also indicated that Fabian's cell phone and the 7790 cell phone traveled from northern to southern California on the day of the crime and later returned to northern California.

On October 3, Fabian's cell phone was in the Stockton area. On October 4, his phone was in the Los Angeles and Hemet regions. Late in the evening on October 4, Fabian's cell phone made or received calls through a Bakersfield tower and a Fresno tower.

The phone number ending in 7790, which was in Cervantes's name, made or received calls in the early afternoon of October 3 while in the Sacramento area. Later that day, the cell phone was in the San Francisco area and then the Los Angeles area. That phone was in the San Diego area for calls between 12:06 p.m. on October 4 and 2:51 p.m. on October 5. The San Diego coverage area stretches east to Arizona and possibly north of San Diego. On the night of October 5, the phone with the number ending in 7790 was again in northern California.

B. Analysis

Alfredo argues insufficient evidence corroborated Molina's testimony as required by Penal Code section 1111. (Undesignated statutory references are to the Penal Code.) We disagree.

6

A conviction cannot be based only on accomplice testimony. (§ 1111.) There must be sufficient corroborating evidence that "shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (*Ibid*.) "To determine if sufficient corroboration exists, we must eliminate the accomplice's testimony from the case, and examine the evidence of other witnesses to determine if there is any inculpatory evidence tending to connect the defendant with the offense. [Citations.]" (*People v. Falconer* (1988) 201 Cal.App.3d 1540, 1543.)

"[C]orroborative evidence is sufficient even though slight and entitled to little consideration when standing alone [citation]." (*People v. Wood* (1961) 192 Cal.App.2d 393, 396; *People v. Frye* (1998) 18 Cal.4th 894, 966 ["Corroboration need only be slight."].) "Only a portion of the accomplice's testimony need be corroborated, and the corroborative evidence need not establish every element of the offense charged. [Citation.] All that is required is that the evidence '"'"connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [accomplice] is telling the truth."'"' [Citation.]" (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 25.) In determining the sufficiency of corroborative evidence, we must view the evidence in the light most favorable to the verdict and uphold the trial court's disposition if, on the evidentiary record, the jury's determination is reasonable. (*People v. Garrison* (1989) 47 Cal.3d 746, 774.)

7

Here, the record contains minimal evidence corroborating Molina's testimony regarding Alfredo's involvement in the crime. The cell phone record evidence, although somewhat unclear, backed up Molina's testimony that on October 4, Alfredo traveled from northern to southern California with Fabian and D'Arte and thus had an opportunity to commit the crimes. Although the phone with a number ending in 7790, which is the phone that traveled from northern to southern California on the date of the murder, was registered to Cervantes, there was evidence of multiple calls between the two phones registered in her name (numbers ending in 7780 and 7790). This evidence suggests Alfredo used one phone and Cervantes used the other. Further, cell phone evidence connected Alfredo to the victim. Specifically, the victim's cell phone showed a call from the 7790 phone number, the phone that had traveled from northern to southern California.

Even without the cell phone evidence, however, Alfredo's lies to police about his identity "warrant an inference of consciousness of guilt and may corroborate an accomplice's testimony [citation]." (*People v. Perry* (1972) 7 Cal.3d 756, 772.) Multiple times during Deputy Murrillo's questioning, Alfredo said his name was "Rafael" and denied his name was Alfredo. Further, Alfredo denied being the person depicted in the wanted poster with his picture and description of the crime in this case. This evidence tended to show a consciousness of guilt. (*People v. Liss* (1950) 35 Cal.2d 570, 576.)

8

While the corroborating evidence was not overwhelming, it was minimally sufficient to connect Alfredo to the commission of the crimes of which he has been convicted and we must uphold the jury's verdict. (*People v. Garrison*, *supra*, 47 Cal.3d at p. 774.)

III. *Sufficiency of the Evidence on Robbery-Murder Special Circumstance*

Alfredo argues insufficient evidence supported the jury's true finding on the robbery-murder special circumstance. He contends he was not a "major participant" in the crime because Fabian instigated the plan and "was the person in charge and the person calling the shots." Alfredo also suggests he did not act with reckless indifference to human life because the original "plan [was] designed to avoid any actual violence" and the record shows he was angry with Fabian for deviating from the plan. We reject Alfredo's argument.

Well settled standards apply to Alfredo's sufficiency of the evidence challenge. We determine "'"whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citations.] We examine the record to determine "whether it shows evidence that is reasonable, credible and of solid value from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.] Further, "the appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence."'" (*People v. Virgil* (2011) 51 Cal.4th 1210, 1263.) Reversal for insufficient evidence "is unwarranted unless it

9

appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support'" the jury's verdict. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) We review a challenge to the sufficiency of the evidence to support a special-circumstance finding in the same manner as a challenge to the sufficiency of the evidence to support a conviction. (*People v. Cole* (2004) 33 Cal.4th 1158, 1229; see *People v. Burney* (2009) 47 Cal.4th 203, 253 [applying standard to support felony murder predicated on robbery].)

"Under the felony-murder rule, a murder 'committed in the perpetration of, or attempt to perpetrate' one of several enumerated felonies, including robbery, is first degree murder. [Citation.] The robbery-murder special circumstance applies to a murder 'committed while the defendant was engaged in . . . the commission of, [or] attempted commission of' robbery. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27-28.)

When the defendant is an accomplice rather than the actual killer, the People must plead and prove the defendant either intended to kill (§ 190.2, subd. (c)) or acted with "reckless indifference to human life" while a "major participant" in the underlying felony. (§ 190.2, subd. (d); see *People v. Thompson* (2010) 49 Cal.4th 79, 125-126 [for special circumstances based on the enumerated felonies in paragraph (17) of subdivision (a) of § 190.2, which includes robbery, an aider and abettor must have been a major participant and have acted with reckless indifference to human life].) "'[T]he culpable mental state of "reckless indifference to life" is one in which the defendant "knowingly engage[es] in

10

criminal activities known to carry a grave risk of death" . . . .' [Citation.] This mental state thus requires the defendant be 'subjectively aware that his or her participation in the felony involved a grave risk of death.'" (*People v. Mil* (2012) 53 Cal.4th 400, 417, quoting *People v. Estrada* (1995) 11 Cal.4th 568, 577.)

Courts have found substantial evidence of reckless indifference to life under circumstances where, as here, a defendant, knowing about the presence of a weapon, has continued to assist with a violent robbery and flee rather than come to the injured victim's aid. (See *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1115-1118 [shooter's testimony that accomplice knew he had a gun and was with him when he picked it up, as well as evidence the accomplice may have been planning to "jack" the victim behind his back supported jury's conclusion she acted with reckless indifference to the life of the man she lured into the alley]; *People v. Proby* (1998) 60 Cal.App.4th 922, 929 [defendant knew of codefendant's willingness to do violence and provided him with a gun, and continued to rob a restaurant, took money and left after the codefendant shot the victim in the back of the head]; *People v. Bustos* (1994) 23 Cal.App.4th 1747, 1754 [sufficient evidence for special circumstance found where defendant was involved in planning the robbery, knew another codefendant had a knife, went into the restroom and struggled with the victim who was stabbed, and "fled together with his accomplices and the robbery loot, leaving the victim to die"].)

Here, substantial evidence supported the findings that Alfredo was a major participant in the crime and acted with reckless indifference to human life. The

11

evidence showed that Alfredo planned the robbery and actively participated in its commission. Alfredo went with Fabian to meet with the victim, drove with Fabian and the victim to the Cawston Avenue apartments, restrained the victim by grabbing the victim from behind around the neck, and put a gun to the victim's head. Alfredo's knowledge of the robbery plan and his participation in it was substantial evidence that he had a conspicuous role and acted as a major participant in the crime. A major participant need not be armed or participate in the actual taking (*People v. Hodgson* (2003) 111 Cal.App.4th 566, 579), nor is a major participant required to be the "ringleader." (*People v. Proby*, *supra*, 60 Cal.App.4th at p. 934.)

Further, Alfredo and Fabian were both armed. Despite having a gun himself and knowing that Fabian had one as well, Alfredo proceeded to participate in the robbery. Moreover, Alfredo used his gun during the robbery, holding it to the victim's head while restraining the victim. The use of a weapon to affect the robbery presented a grave risk of death. Additionally, rather than coming to the victim's aid, Alfredo fled with Fabian and D'Arte. This constitutes substantial evidence that Alfredo knowingly engaged in criminal activity involving a grave risk of death. (*People v. Mil*, *supra*, 53 Cal.4th at p. 417; *People v. Lopez*, *supra*, 198 Cal.App.4th at pp. 1115-1116; *People v. Bustos*, *supra*, 23 Cal.App.4th at pp. 1751, 1754-1755.)

IV. *Alleged Prosecutorial Misconduct*

A. Background

Alfredo moved in limine to preclude any mention of the outcome of Fabian's earlier trial. The prosecutor agreed and the trial court made that order.

In his closing argument, defense counsel stated, "The evidence did a good job . . . of convicting Fabian Felix and Juan Molina. It did not do a good job of convicting Alfredo Felix." In the prosecutor's closing argument, he stated he agreed with defense counsel that the evidence did "a really good job of convicting Fabian Felix." The prosecutor went on to say, "[A]s I told you before this morning, if the evidence has done a convincing job of demonstrating that Fabian Felix shot [the victim] in that car that day in Hemet, then the evidence demonstrates Juan Molina told the truth when he testified November, 2010, and when he testified for you a couple weeks ago. We apparently agree on that. I guess the interpretation is what's different." Defense counsel did not object to the prosecutor's statements.

B. Analysis

Alfredo argues the prosecutor committed misconduct by violating the court's in limine ruling barring any mention of the outcome of an earlier trial of his brother, Fabian Felix. We reject this argument.

"It is . . . misconduct for a prosecutor to make remarks in opening statements or closing arguments that refer to evidence determined to be inadmissible in a previous ruling of the trial court. Because we consider the effect

13

of the prosecutor's action on the defendant, a determination of bad faith or wrongful intent by the prosecutor is not required for a finding of prosecutorial misconduct. [Citation.] A defendant's conviction will not be reversed for prosecutorial misconduct, however, unless it is reasonably probable that a result more favorable to the defendant would have been reached without the misconduct. [Citation.] Also, a claim of prosecutorial misconduct is not preserved for appeal if defendant fails to object and seek an admonition if an objection and jury admonition would have cured the injury. [Citation.]" (*People v. Crew* (2003) 31 Cal.4th 822, 839.)

Here, Alfredo forfeited his claim of prosecutorial error by failing to object at trial. Even if the claim was preserved, however, it is not reasonably probable that a result more favorable to Alfredo would have been reached without the prosecutor's statement. If we read defense counsel's comment in his closing argument as a statement indicating Fabian and Molina were previously convicted, defense counsel had opened the door to such information and made the jury aware of Fabian's and Molina's convictions before the prosecutor did so. Given defense counsel's closing argument, the prosecutor's statement was harmless.

An equally plausible alternative reading of defense counsel's comment that "the evidence did a good job of convicting Fabian Felix and Juan Molina" is that defense counsel was commenting on the strength of the evidence against Fabian and Molina as presented in this trial as opposed to the strength of the evidence against Alfredo. If we interpret defense counsel's statement this way, then the

14

prosecutor's statement agreeing with defense counsel that the evidence "did a really good job of convicting Fabian Felix" does not run afoul to the trial court's ruling precluding reference to Fabian's conviction in an earlier trial.  Thus, the prosecutor did not commit misconduct.

## DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.